## A. M. GRAY v. CELESTE COUVILLON.

Thirty years uninterrupted possession is required to enable a party to prescribe beyond his title.

To sustain the plea of prescription under Art. 849, C. C., it is necessary not only to show a possession of ten years, but also that this possession has been held by boundaries fixed according to a common title or different titles. Art. 829, and the following articles, prescribe the mode of fixing boundaries, and the Art. 849 must be considered in connection with these.

Parties are not bound by a consent to boundaries which have been fixed under an evident error, unless perhaps by the prescription of thirty years.

APPEAL from the District Court of Avoyelles, *Ogden*, J.

*Barlow & Waddill* and *H. & S. L. Taylor*, for plaintiff.    *W. E. Cooke*, for defendant and appellant.

COLE, J.    This is an action of bornage or boundary, instituted by the plain- tiff to establish his eastern boundary between his lands and those of defendant.

He asks to be placed in possession of his land up to the line called for by his titles, and that defendant be decreed to pay him the sum of five hundred dol- lars damages for the illegal detention and cultivation of a portion of his land, and the further sum of five dollars per acre per annum for all the land of plain- tiff in defendant's possession.

The defendant answered by a general denial, and pleaded the prescription of ten and twenty years.

Afterwards, the defendant sued out an injunction to prevent plaintiff from digging a ditch on the land she claims to have acquired by prescription, until the decision of the boundary suit.

To this plaintiff, who is defendant in the injunction, filed a general denial, and claimed damages for the sum of one hundred and fifty dollars.

In 1808, *McCrummen*, a United States Deputy Surveyor, by order of the general government, surveyed the tracts of land mentioned in this suit, besides other townships in the Southwestern Land District, and it was by this survey that the government sold, and by it the different owners bought and sold. They were re-surveyed by *W. C. Robert* in 1849; these surveys conform to each other, and were approved at the land office.

The division line now in contest, has been for many years since, a matter of dispute between the different proprietors. This originated from the fact, that the survey made by *McCrummen*, was nearly obliterated, and was not visible by ordinary examination.

In 1834, the owners of a portion of the two tracts now owned by the parties to this suit, wishing to have the true line run by *McCrummen* retraced, called upon one *Baggerly* to do so, but his survey was unsatisfactory.

This suit was instituted to have the line permanently fixed between lands of

plaintiff in Sections 10 and 15 of T. No. 1, R. 5 E., and those of defendant in the contiguous sections, 11 and 14.

Plaintiff claims that the true boundary between his lands and those of defendant is the McCrummen line, or the North and South section line common to and separating the parallel sections in which they are respectively situated, because these lands were originally acquired according to lines of United States surveys.

The defendant claims by the Baggerly survey, although she purchased by the government survey.

An order of survey was granted by the court, and *W. C. Robert* and *James McCauley*, United States Deputy Surveyors, were appointed.

The line of division claimed by plaintiff, which is the one produced from W. to W. on the court map, is proved by the testimony of *Robert* to be the government or McCrummen line. The return of *McCauley* also agrees with the line run by *Robert*.

The line for which defendant contends is T. P. produced towards M., as exhibited by the court survey, which *Robert* in his testimony states "is an isolated line and has no possible connection whatever with any other lines or corners, and was evidently located by some surveyors, as a temporary approximate line, without regard to any actual connections."

The line produced from W. to W., which is the one decided by the lower court to be the true dividing line, gives to plaintiff that portion of land shaded yellow on the court map, containing 9 78-100 acres, which is now in the enclosures of defendant, and claimed by her by prescription and by the line T. P.

The 9 78-100 acres of land claimed by defendant are not covered by her titles; she can then only succeed by her plea of prescription, but this defence cannot be maintained.

Defendant relies on Art. 848 and 849, C. C.,—but no uninterrupted possession for thirty years, as required by Art. 848, has been established.

Art. 849 does not sustain her plea of prescription for ten years.

This Article declares: "If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land, on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years if absent."

Defendant pretends that she has been in possession more than ten years and is therefore entitled to the land in controversy.

We are of the opinion, that to support the plea of prescription, under Art. 849, it is necessary not only to show a possession of ten years, but also that this possession has been held by boundaries fixed according to a common title or according to different titles, and that this Article must be taken in connection with Art. 829, and the following articles, which explain how boundaries are to be fixed.

Now in the case at bar, it is not established that *Baggarly*, who located the line of division, which she claims, was a sworn surveyor; that he ever made any *procès verbal* of his work; that he ever examined the title papers of the parties, nor that he ever complied with other formalities required by the Articles of the Code relative to fixing the limits and surveying of lands.

The evidence does not establish conclusively that the different proprietors agreed positively to consider the Baggerly line as the settled division line. It was pointed out by some of them as the division line, but there is no evidence

to show that they promised to take it for ever as the true boundary between the lands now owned by the parties to this suit.

It also appears that they thought it the McCrummen line, and the one called for by their titles from the government.

If then they gave any consent to the Baggerly line, it was one given in error.

Parties are not bound by a consent to boundaries which have been fixed under an evident error as to the correct location of their titles, unless, perhaps by the prescription of thirty years. 6 A, *Frederick* v. *Brulard*, p. 383.

Tho·case of *Lemoin* v. *Monela*, 9 A. p. 515, has been referred to by defendant to show that in actions of bornage, a dividing line long established between the parties will be taken as the true one in preference to running a new line more in accordance with the calls and distances and which gives to plaintiff a larger boundary. But the decision in this case is based on the fact that the dividing line had been recognised and established between the lands of plaintiff and defendant and those persons under whom they claim, more than twenty years previous to the commencement of the suit.

The court in their decision, referring to the case of *Williamson* v. *Hymel*, 11 L. p. 183, says:

"We have heretofore said, that 'in an action of bornage, a dividing line long established between the parties, and referred to in the *procès verbal* of sale of the plantation to the plaintiff, will be taken as the true one, in preference to running a new line more in accordance with the calls and distances, and which gives to the plaintiff a larger boundary.'"

In this case of *Williamson* v. *Hymel*, the court say, "We think, therefore, the jury was warranted in concluding that the plaintiff, having purchased an indefinite quantity, could not claim beyond a line which existed long before his purchase, and that the description of the plantation in the inventory and in the *procès verbal* of sales, referred to the existing lane and division line, as they had remained for fifteen years."

The case of *Zeringue* v. *Harang's Administrator*, 17 L. p. 350, is also relied on by defendant.

But in this case the court, after ordering that new posts should be placed by the surveyors where the former limit or fence stood, say: "When their survey shall be returned into court, it will be competent for the plaintiff to contest defendant's right to this surplus of land not called for by his title; and he will recover it, unless defendant shows such a possession of it, under the former inclosures, as will establish in him a right to the same by prescription; if, therefore, plaintiff has suffered any grievance, he can be relieved on the final judgment to be hereafter rendered in the cause, and should not have called upon us to interfere at this stage of the proceedings."

The cases just referred to, vary much from the one at bar. In this no reference was ever made in the sales between the different parties to the division line claimed by defendant.

No such consent as contemplated by law is shown to have been given by the various proprietors to the line of defendant, and it is not proved that they considered it as the recognized and established boundary by which the ·limits of their lands were determined.

On the contrary their consent seems to have been merely a tacit recognition for the time being of this line, until the boundaries of their lands should be accurately defined.

We are of opinion, that as the titles of the parties call for the boundary line which has been determined by the court survey, and as no such consent as is contemplated by law has been shown to have existed between the parties for a series of years to a well established and recognized line different from that called for by the titles, and as the plea of prescription for the 9 78-100 acres is not established, plaintiff is therefore entitled to a judgment in his favor.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be affirmed with costs.