Marshall,
 
 Ch. J.
 

 delivered .the opinion of the Court as follows:
 

 This cause depends on the lalul law of Virginia, whicb is .also the land law of Kentucky, that state having formed a part of Virginia when the act was passed in which the titles of both Plaintiff and Delendant originated. Both parties claim the land in controversy by virtue of improvements made previous to •the first day of'January, 1778, which improvements were recognized by the act generally termed “ the previous title law,” and gave the persons malting them pre-emption of one thousand acres of land, to include the improvement, on paving therefor the price at whidh the state sold its vacant lands, “ provided they respec- “ tively demand am! prove their right to such pre-emp-
 
 “
 
 tión before the commissioners for the county to be ap- « pointed by virtue of this act, within .eight months.” *
 

 In the year 1781 an act passed which, after reciting that, by the discontinuance of the commissioners in the district of Kentucky, many good people of the commonwealth were prevented from pioving their rights of settlement and pre-emption, in due time, owing to their being engaged in the public service of this country, on-acts that the county Courts in which such laiids may lie bo empowered and required to hear and determine such disputes, and that the register of the land office be empowered and directed to grant titles on the deter-initiations of such Courts, in the samé manner as if the commissioners liad determined the same.
 

 It appears that,.in the year 1773, John Finley, the Plaintiff in the cause, marked and improved the land in controversy. He entered into the continental in the year 1776, and continued therein throughout the war. His claim was not made-before the commissioners, but was made to the Court of the county in which the hinds-lie, by which Court his claim was allowed, and the following certificate was granted: “'At a Court «held for the county of Fayette, March 12th, 1782, «‘application and satisfactory ‘ proof being made, this « Court doth- certify that John Finley is entitled to the
 
 *166
 
 « pre-emption of 1000 acres of land, situate -the on main. “ branch of Licking Creek, to include an improvement “made iti the year 1773. by said Finl-y, and tó be “ bounded by a survey made, at the time; for him, which “ includes the Upper Blue Lick, by virtue of such mark“ingout and improving, and his being, in pu'vhc ser- « vice when the commissioners sat in the district, and “ thereby prevented applying for the saíne.”
 

 A pre-emption warrant was obtained, and, on the 14th day.of November, m the year 1783, an entry was made with the proper surveyor in the following words: « John Finley enters 1000 acres of land on a pre-empt£ tion warrant, No. 2526, on Licking, to include the « Upper Blue Lick, and bounded on three sides by the «line, bf an old survey made in the year 1773, begin«ñíng,” &c. Tñis entry was surveyed, and a patent issued thereon,
 

 William Lynn, under whom the Defendants claim, made an ¡nfprovement on the same ground, in the year 1775, and laid his claim before the commissioners, who allowed the same, and granted, a certificate therefor, dated the 20th day of November, in the year 1770, in the following words: « William Lynn this day claitiv'd « a pre-emption of one thousand acres' of land at the
 
 “
 
 state price, lying on the south side of Licking Creek, « known by the name of the Big,Bluc Lick, to. include « the said lick, lying in a short bent of the said creek, « by improving the same in the year 1775, &c;” On the 22d of June, 1780, Lynn, having obtained a preemption warrant, entered the same with, the proper surveyor, in these words: « William Lj nn, James Bar-«hour and John 'Williams’ enter 1000 acres _of land «upon a pre-emption warrant, beginning a quarter <f « a mile below the Big Blue Lick on Licking, oh the « south side thereof, running on both sides of the said «creek, and east an.d.south,for quantity.” This entry -was so surveyed as to include the lands in dispute, arid a patent was obtained thereon of an eaiTu-r date than that of Finley. Upon this patent an ejectment was hrought; and judgment obtained by Lynn, Barbour and Wilbams. Finley has brought this, suit to compel a conveyance of that part, of the land held by Lynn and others, which is included in his patent. On a hearing,
 
 *167
 
 it was the opinion of, the .Circuit. Court' that Lynn a*wl others held the better title; in conformity with which a decree was mkde. From that decree Findley has pealed to this Court.
 

 The peculiar state of titles to, land in Kentucky, a senior patent being, in many cases, issued on a junior title, and it being a rqle in their Courts of law riot to look beyond the patent, have settled the principle, that Courts of equity will sustain a bill brought for the purpose of establishing the prior title by entry* and of obtaining a conveyance from the person holding under a senior patent issued on a junior entry. The Courts n the United States have conformed to this practice, and adopted the principle.
 

 . It is also settled in Kentucky that, between pre-emption rights; the prior improvement will hold the larid, although .the certificate of the commissioners, the entry,' the survey and the patent, be.all posterior, in point of time, to those obtained by the person who has made an improvement of a later date.
 

 It Follows, from thebe established principles, that FinJey must prevail, unless he has lost the right acquired in consequence of his improvement.
 

 The Circuit judge was of opinion that this right was lost by the form of Ills entry with the surveyor. Not having, in that entry', called, in terms, for . his improvement, that judge was of opinion that, although his entry does, in fact, comprehend his improvement, yet he has surrendered the preference which his preemption warrant gave-him, and sunk his claim to the level of a common treasury warrant. This Court can perceive no reason for that opinion. The law requires'that the entry shall, -in fact, include the improvement, but does not make it essential.
 
 to
 
 the ^.dignity. of the entry that the' improvement shall, in terms, be called for. The certificate expressly states that the land granted is to include the improvement; and the entry, which is made with remarkable precision, conforms exactlyto the certificate in the description ■ of the land intended tó be taken.
 

 
 *168
 
 Rut it is contended by the Defendant til at, whatever may be the opinion of the Court on this point, Finley’s title as to a pre-emption, must'yield to that of Lynfl, in consequence pf his having omitted to assert his claim the Court of commissioners. The legislature could not, it is said, after permitting, the time for making this claim to expire, revive it td the prejudice of any other person who had acquired titWto the land» 'It is added that the decisions in Kentucky have beei.' adverse to cities to pre-emptions depending on certificates' granted by the county Courts, in cases where they come into competition with titles gained before the grant- of such certificates.
 

 This Court would not willingly depart from the state decisions, if they have set! led the principle
 
 ■the
 
 one'way or the oilier; and would, therefore, have deferred the determination .of this cause until more certain information could he obtained, had it rested solely on the validity of the Plaintiff’s title as founded pm a pre-emption/ But, on an inspection of the record, I he entry of the Defendants is deemed so radically defective as necessarily to "yield to the title of the Plaintiff, .should his warrant even he reduced to the grade of a treasury warrant.
 

 The law requires that the holder of a land warrant “ shall direct the location thereof so specially and pre- « cise-Iy as that others may be enabled with certainty to ‘«locate other warrants o.rrthe adjacent, residuum.”
 

 Such has' been the difficulty of making special loca • tioirs, that much of the precision which the law would seem to require, has been dispensed wifh ; but a reasonable and practicable certainly has always been deemed necessary; and wherever the material and principal call of a location has been calculated, instead of informing, <o misguide subsequent locators,! the location■ itself has been brought into hazard, and it has often been determined that the survey was made on other land than that which the entry covered.
 

 In examining these questions. the Courts of Kentucky have universally and properly determined that all subordinate calls in an entry must yield to a principal
 
 *169
 
 call to which they may be repugnant, if a great and prominate object, immoveable and durable in itself, and of general notoriety, be called for in a location, that object must fix and locate the entry, although other minor and temporary objects, to he discovered only by a strict and successful search, might prove that the locator really intended to take other land.
 

 In the entry of Lynn and others there is such a principal call. The Big Blue Lick is perhaps an object, of as universal notoriety as any in Kuitmky, But there are two. Blue Licks on the same creek, and both of them are large licks. In such a case, the locator would certainly be at liberty, and it would be his duty to designate the lick he intended to. take for if his entry would apply to the one as' well as to the other, it would be justly ( hargeable with a vagueness which would leave, subsequent locators unable to locate with certainty the adjacent residuum. This entry has, in its terms, designated the lick intended to be included. It is
 
 “ the
 
 Big Blue Lick.” The entry' does not call for
 
 a
 
 Big Blue Lick, but for
 
 the
 
 Big Biue Lick, thereby excluding any other lick than that which was emphatically denominated
 
 the
 
 Big Elite Lick-.
 

 We are then to ask which of these licks a man in Kentucky, holding a warrant which he intended to locate, would suppose was
 
 the-
 
 Big Blue Lick.
 

 Upon this subject the, testimony is not .doubtful. ' It is in full proof that, at the time the entry of the Defendants was made, and for some years before, the Lower Blue Licks were generally called the Big Blue Licks $ and that where the Defendants have surveyed ’ was known by the name of the Upper Blue Licks. They, were sometimes, though rarely, distinguished from e.ach other as the Upper Big Biue Licks and the Lower Big Blue Licks; sometimes as the Upper and thé Lower Blue Licks; but the term
 
 the
 
 Big Blue Licks, when used without the word “ upper” or “lower,” was universally understood to designate the Lower Blue Lieks„
 

 The company which > e this location in 1775, had not discovered the Low., flue'Licks, and therefore denominated the spring which th<" did discover, «the
 
 *170
 
 Big Blue Lickbut the name originated and expired with themselves. It was never adopted by. the people of the country. It is probalde tliat Lynn did contemplate the Upper Blue Licks wiien he made his entry; but between conflicting entries a mistake of this kind is fatal to the person who commits it. In the case of Tayior and Hughes it was impossible not to perceive that Taylor intended one creek when he named, another, 5 but subsequent locators could judge of his intention only from the words of his entry.
 

 But it ,is contended that there are other explanatory calls in the entry, which cure the defect which has been stated, and designate, with sufficient certainly, that the Upper Blue Lick was intended to he included in the entry.
 

 The entry is said to require a lick on the south side of Licking; and tiie sprrhg which issues at the Upper Blue Lick is on the south side. The words are;
 
 “
 
 Be«ginning one quarter of a mile below the Big Biue « Lick,on Licking, on the south side thereof;” The locator intends ,to describe his beginning; and these words are to-be construed with reference to that intention. Bo the words, “ on Licking,” describe the place of beginning, or the location of the Big Blue Lick? The latter was unnecessary, because there was no Big Blue Lick except on Licking; and because, were the fact otherwise, the lick would be ascertained by calling for a beginning a quarter of a mile.below it on Licking; But the beginning might be a quarter, of a mile below the lick, and yet not on the creek. The beginning would be, in some degree, uncertain, unless it be fixed (by those words. The entry is understood as if it were expressed thus: “ Beginning on Licking, on the south sid'1 thereof, a quarter of a mile below' the Big Bliie Lick.” If reference he had to the certificate granted by the commissioners, that places the land, notithe lick, on the south side of the creek.
 

 A cabin and a marked tree in a country full of cabins and marked trees, cannot control a call made for an object of such general notoriety as the Big Blue: Lick. A subsequent locator would look for them only at the Big Blue Lick- '
 

 
 *171
 
 It is the opinion of this Court thaf tlie decree of the Circuit Court be reversed and annulled, and t.liat the Defendants be-.decreed to convey to the Plaintiff so much of the land comprehended within this grant as appears by the survey made in tins cause to. lie within the bounds of the grant made 1o the Complainant,
 
 *
 

 *
 

 The opinion of the Circuit Court; consisting of judges Todd and Innes, * was a9 follows:
 

 The claims of the parties in this suit commenced as pre-emption rights, yet by their subsequent acts in making their entries with the surveyor they have reduced them to the footing of treasury warrant claims by omitting in their entries to call for their respective improvements, the foundation and essence of pre-emption rights. Hughes’s Rep. Í94, Bryan and Owings vr Wallace. These circumstances lender it unnecessary for the Court to express an opinion as to the description of persons contemplated to be relieved by the act of the Virginia legislature which passed in May, 1781.
 

 The Defendants derive their title under an entry made the 22d of June, 178'>, in the words following, to wii :•
 
 •*
 
 William Lyi.n, James Barbour and “ John Williams enter L00Ó acres upon a pre-emption warrant, beginning “ one quarter of a mile below the Big Blue Li: k, on Licking, on the south side thereof, running.up both sides of the said creek, and east and south for <c quantity,” which being of elder date than that of the Complainants, the Defendants holding the elder grant for the lands in controversy, 1 shall therefore consider the validity of their entry first, and test thereby their right to the land in dispute, which, if it be defective and cannot be supported, must yield to the Complainant, whose entry, in that case, is deemed good and Va- * Ikl for so much as it can legally cover
 

 The important call in the entry of the Deféndants is
 
 “
 
 the Big Blue Lick on Licking, on the south side thereof.”
 

 The validity of this entry rests on the following points: Was the lick, described in the connected plat filed in this-suit by me name of the Blue Lick, on the 22d day of June, T780, and prior to that time generally known and called by the name of “ the Big Blue Lick ?” Does ii lie on the south side of Licking? Is it a big lick ? If the lick was i ot notoriously known by the name of the “ Big Blue Lick” prior to June, 1780, is the identity thereof Sp described as to put a subsequent locator on his guard ?
 

 By the testimony taken In this cause the lick in controversy was discovered by- the Complainant and hÍ8 fellow adventureis in the year 1773, and was by them called .the Upper Bin; L»*U in contra-distinction to ano her and . larger lick which hud then been discovered hy some'of the company lower down Licking,
 

 In the yew
 
 1775
 
 another company of adventurers, consisting of five persons of whom William Lynn whs one, discovered the lick, and by them it was exiled the “ Big Blue Lick” and from the.entry made with the surveyor by Lynn, it was. so known to him,'aud.c»lled by that.name
 
 on
 
 the 22d day .of June, 1780. •
 

 From -tlie year
 
 1777
 
 to the present day the .lick has been generally, and perhaps universally, with tho above exception by Lynn,, designated by the name of the Upper Blue Lick. The weight''of testimony preponderates, as to the name of the lick, in favor óf the Complainant. Therefore, as to the-notoriety of the licit, by the name of “the Big Blue Lick,” the entry of the Defendants is defective.
 

 Although it often happens that notoriety of an object called for Id an entry cannot he. satisfactorily proved, yet (he identity thereof may be so * dc-
 
 *172
 
 scribed, .that it .may be found by reasonable enqjiiry and searching therefor, and -when found, known by the description. In that case, identity is equal to notoriety.
 

 I will now enquire how far the identity of the lick called for in the entry of the Defendants can he supported*
 

 All the witnesses in the cause speak1 of the lick in question as being a blue Jick, and it is so admitted by the parties who, in their admission, represent the salt water issuing from the spring to be of a bluish color. There is no testimony which proves the existence of .any Blue Lick on Licking, except the Vppetf and Lower Blue Licks. The testimony establishes two" salt springs on the south side of Licking; tliat the one lowest down is less than the upper spring; that there is another salt spring on the north side of Licking, at the. jdace called the Lower Blue Lieks, which is larger than that on the south side of the stream; and that there is no salt spring on the north side of Licking opposite the upper lick. The witnesses also,' when speaking of the lower salt spings, describe them generally as one entire object, “the Lower Blue Lick,” or Licks; and William Brooks describes both the Upper and Lowei Blue Licks as big licks, and that the upper spring discharges most water.
 

 The Courts in this country have always endeavored to sustain an entry, if by reasonable construction it be possible For this purpose they will reject an absurd, or superfluous call: they will supply a word: they will consider a call not proved as expunged; and although there are more allegations than are proved, yet if enough is proved to render the entry sufficiently certain, the Court will support it.
 

 These observations are made to show that the Courts will go great length? fo support defective entries in imperfect and unimportant calls, and are not app jeabie to the entry now under consideration, which, in itself, is considered as possessing suffieieni identity to put a subsequent locator upon enquiry, and when tound, to know the place by •'the description contained in tho entry. The Upper and Louver Blue Licks bad received appropriate names as early as the year 1777. The Lower Blue Licks, although there were at that place two salt springs, one on the north’and the other on the south side of Licking, had received an appropriate name conveying, the idea of unity. This was not thq situation of the Upper Blue Lick, which, ail hough it had also an appro* priate name by which it was“most generally known at the time the entry of the Defendants was made, yet it lies altogether on the south side of licking
 

 The testimony taken in this cause supports every call in the entry of the Defendants. All the. witnesses concur that the place designated in the connected plat as a blue lick is entitled to that appellation Brooks says that both the licks, i. c. the Upper and Lower Blue Licks, are big licks; and m answer to a request to express his opinion which of the two was the largest, said he would recommend an examination; and the upper lick is on the south side of ^Licking. These facls'apply to the description given in- the Defendants entry, and will not apply to the Lower Bftte,Licks Therefore, as no entire blue lick is proved to exist on the south side of Licking, except that designated in the connected plat, the entry of the Defendants is sustained* and the Court -is of opinion that no doubt could exist in the mind of a subsequent locator, upon viewing the Upper and Lower Blue Licks, and comparing the situation ami other circumstances attending the Upper Blue Lick, with the entry, but thaJ it was the place described and would defeat any idea of ambiguity, if it bad occurred.
 

 On examining tbe connected plat I find that the Defendants have corn .menced their survey on Licking, about one hundred poles below the lick , whereas, by the entry, they ought to have begun only eighty, that being the’ precise distance called for as the point of beginning of their survey • to rectify which a new survey was ordered, upon (he return of which,'tHe Defendant were decreed to convey to the Complainants so much of the land as was in the Defendants original purvey/ -¿ml was now left out by tbe new survey, as interfered with the Complainant's survey., and that *hs Complainant’s bill be dismissed as to all the residue.