ROGERS, J.
 

 On June 22, 1883, under certificate No. 4535, N. W. D., John Carey entered the following described lands situated in the parish of St. Mary, this state, viz.:
 

 “E.
 
 Yz
 
 of E. Yz, see. 4, all secs. 8 and 9, all of 10 and 15 outside of Cote Blanche Is. and frl. S. W.
 
 Yk
 
 of N. W.
 
 Yi
 
 and fl. W.
 
 Yz
 
 of S. W.
 
 U
 
 west of Cote Blanche Island. Sea marsh. Of sec. No. 14 in township No. 15 s., range No. 7 E., in the S. W. land district, containing 2,096.25 acres, according
 
 to the
 
 official plat of the survey of said lands in the state land office.”
 

 On the same day, the state of Louisiana issued patent No. 5271, covering the lands, to the said entryman. The plaintiffs, through mesne conveyances, acquired the land from the original patentee.
 

 On October 6, 1917, at a sale conducted by the sheriff of the parish of St. Mary, under the provisions of Act 215 of 1908, John M. Caffery, one of the defendants herein, became the adjudieatee of the following described property, to wit:
 

 “All the land between the incorrect line of Cote Blanche Island as represented on government plat of 1858, and survey of J. P. Kemper, in 1903, see. 10, 199.65 acres, sec. 11, 129.88 acres, sec. 14, 89.38 acres, sec. 15, 25 acres in township 15 south, range No. 7 east, in the Southwestern land district, parish of St. Mary, containing 419.16 acres according to the official plat of the survey of said lands in the state land office.”
 

 This adjudication was confirmed by patent No. 10705, issued by the state of Louisiana under date of November 21, 1917. By deed executed on January 8,1922, John M. Caffefy, with the reservation of royalty rights on all minerals produced from said lands, sold all of section 11, lying outside of Cote Blanche Island, together with other property, to the Humble Oil & Refining Company, his codefendant. .
 

 All of the patents and deeds hereinabove referred to were duly and timely placed of record in the clerk’s office of the parish of St. Mary.
 

 Plaintiff instituted this suit to have the patent issued to Caffery, and the subseqent sale from said patentee to the Humble Oil & Refining Company declared null and void and canceled from the parish records, on the ground that the land therein described as section 11, in township 15 south, range 75, had already been patented to Carey as section 10. After filing various exceptions, pleas, and motions, some of which were overruled and some of which were referred to the merits, defendants answered, denying that the Carey patent covered the land in controversy, averring that the boundaries of the lands patented to Carey were definitely fixed by the survey of Rightor & MeCullom at the place where said survey showed Cote Blanche Island to be, that the said survey erroneously placed the island too far to the westward, but that Carey was not prejudiced thereby, as the boundary of his land at the place where the island appeared to be according to said survey was not disturbed, leaving to him the full acreage called for by his patent.
 

 The court below gave judgment in favor of plaintiff, and defendants appealed.
 

 The controversy between the parties is not so much with regard to the nature or strength of the respective patents as. it is with regard
 
 *75
 
 to the áre¿ which was actually conveyed to John Carey; for it cannot be denied that the state was without power to sell to John M. Caffery land in 1917 which it had previously sold to Carey in 1883. The issue to be determined, therefore, is as to the meaning and effect of the grant to Carey by the state of “all of section 10 outside of Cote Blanche Island, as per plat on file.” Plaintiffs contend that the patent under which they hold calls for a boundary on the island, and that section 10 must be extended to said boundary no matter where the island may be actually located. Defendants argue, on the contrary, that nothing vested under the Carey patent but that part of section 10 which was outside of Cote Blanche Island; that the part of the section which was understood to be inside the island was distinctly reserved from the patent.
 

 Cote Blanche Island rises out of the sea marsh to a height of about 65 feet. On three of its sides it is surrounded by the marsh, and on its other side it is bounded by the waters of Cote Blanche Bay.
 

 The record shows that the map referred to in the ■ Carey patent as being on file in the land office was a map reciting on its face that it was compiled from the survey of Rightor & McCullom. According to this map, and the field notes of Rightor & McCullom, Cote Blanche Island and section 10 overlap. It is clear, however, from the evidence, which is substantially uncontroverted, that the island was erroneously located on the map and by the survey. As a matter of fact, it is nearly half a mile east of the spot where it was placed by Rightor & McCullom. This half mile of land intervening between section 10 and Cote Blanche Island is a part of the land patented by the state to John M. Caffery, and is the subject of the'present litigation.
 

 Plaintiffs rely upon the rule that, where a patent or deed calls for a natural object or monument as a boundary, such boundary must always be taken as permanent, the call for it overcoming every other conflicting clause in the description.' The reason for the rule, which may be deduced from the language of Chief Justice Marshall in Finley v. Williams, 9 Cranch, 167, 3 L. Ed. 691, is that the monument is immovable and durable in itself and of general notoriety. If the monument is not immovable and is not durable, however, the rule ceases, for the reason ceases.
 

 And the principle will not be applied where, as here, the facts conclusively show that no island existed, or exists, at or near the place indicated on the plat, or where, as here, the attempted survey of the land in controversy is only fragmentary and incomplete. See Jeems Bayou Fishing & Hunting Club v. United States, 260 U. S. 561, 43 S. Ct. 205, 67 L. Ed. 402. The cited'case which involved lands in the parish of Caddo, in this state, is strikingly similar to the present one. There a plat erroneously located a boundary line on Ferry Lake. The evidence, however, showed that this line was from a few hundred feet to three-quarters of a mile from the actual location of the lake. - The area included between the real and supposed boundaries was about the same as is in dispute here. The court held that thé appellant’s title under the patent did not extend to the "water’s edge.
 

 Another and familiar rule frequently resorted to in construing deeds is that, where a plan is referred to as part of the description, all the particulars appearing on such plan are to be regarded as if they had been fully set forth in the deed.
 

 Applying the foregoing rules and principles of construction to the instant case, and in order to fulfill the conditions of the Rightor & McCullom map as far as it is possible to do so, we are bound to establish the line of plaintiffs’ title where it was located on said map; that is to say, on the crescent-shaped line running, approximately, through the middle of section 10. Under this decision, with
 
 *77
 
 due allowance being made for tbe erosion caused by the waters of Cote Blanche Bay, plaintiffs obtain all the acreage called for in the Carey patent. See White v. Leovy, 49 La. Ann. 1660, 22 So. 931.
 

 Plaintiffs, alternatively, attack the Caffery patent on the ground that Act 215 of 1908 is unconstitutional, and because the formalities of law were not complied with in surveying, describing, subdividing, advertising, and transferring the lands covered by the instrument. Plaintiffs, however, are without right to raise these questions, since they are not the owners and have no interest in the lands acquired by John M. Caffery from the state. We must, therefore, decline to consider them. Vander Sluys v. Finfrock (La.) 103 So. 732,
 
 [1]
 
 and authorities therein cited.
 

 Plaintiffs also claim, in the alternative, that the Caffery patent should be canceled because they are entitled, as actual settlers, to pre-emption rights upon the lands in controversy. They base this contention upon the provisions of Act 21 of 1886. Plaintiffs, however, fail to allege and show in their petition any facts which would bring them within the protection of the statute. But if, for the purpose of discussing the question suggested, we pretermit the lack of sufficient allegation in the petition, nevertheless we do not find any merit in the plea. The Act of ,1886 was enacted for the protection of actual settlers on public lands. Section 5 specifically declares that the possession, improvement, and settlement referred to in the act shall be only for agricultural or homestead purposes. We do not find any evidence in the record which shows that either plaintiffs or their authors in title ever complied with the provisions of the statute in respect to the lands which are in controversy in this suit. There is no similarity between the present case and the Albritton Gases, reported respectively in 148 La. 427, 87 So. 321, 153. La. 507 and 562, 96 So. 121, and 154 La. 359, 97 So. 489.
 

 For the reasons assigned, the judgment herein appealed from is set aside, and it is now ordered that there be judgment in favor of defendants and against the plaintiffs, rejecting plaintiffs’ demands and dismissing their suit, at their cost.
 

 LAND, J., takes no part.
 

 THOMPSON, J., dissents.
 

 [1]
 

 158 La. 175.