McBRIDE, Judge.
Plaintiff, claiming to be the owner of lots 4 and 5, square 58, New Addition of Mechanicham, Gretna, Parish of Jefferson (referred to hereinafter simply as lots 4 and 5), brought this suit to nullify two tax sales of said lots, in which defendants are adjudicatees, for unpaid taxes due the State of Louisiana for the years 1955 and 1956 on an assessment to Ben L. Lewis. The trial judge dismissed the suit holding that as plaintiff has shown no ownership or interest in lots 4 and 5, he could not stand in judgment Plaintiff has appealed.
Plaintiff deraigns his title back to Ben L. Lewis who, on January 29, 1925, acquired three squares of ground (square 58 being included) from Cassagne, CB 66, folio 477, Parish of Jefferson. Plaintiff claims that upon the death of Ben L. Lewis on June 1, 1951, his widow, Mrs. Pauline Lewis, became the owner of lots 4 and 5, under provisions of LSA-C.C. art. 915. Per authentic act of sale August 15, 1961, Mrs. Lewis sold said two lots to plaintiff, CB 536, folio 687, Jefferson Parish.
Defendants contend that Ben L. Lewis did not own lots 4 and 5 at his death in that he had on September 6, 1929, sold them, along with other property, to The Ben L. Lewis Corporation (organized under the laws of Louisiana), CB 103, folio 306, Jefferson Parish. The consideration for said sale was the issuance by the vendee corporation to- Ben L. Lewis of 19,998 shares of its no par value common stock and the assumption by the corporation of certain mortgages.
The issue to be resolved is whether lots 4 and 5 were included in Lewis’ sale to the corporation.
In the act whereby Lewis acquired from Cassagne, square 58 was described as being bounded by four named streets; no mention was made of the number of lots the square contained nor were any lot numbers referred to. On June 28,1928, Ben L. Lewis sold to and reacquired from Liberty Homestead 12 lots of ground in square 43, 18 lots in square 50, 16 lots in square 51 and 16 lots in square 58. In the description of the last mentioned lots, i. e. those in square 58, they were designated as lots 1, 2, 3, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18. It is to be noted that numbers 4 and 5 are omitted. The description sets forth the measurements of each of the 16 lots as per a plan by J. A. D’Hemecourt, surveyor, dated June 29, 1864. In the resale by the Homestead to Lewis, the consideration is stated to be $15,000 on terms of credit, and Lewis granted a vendor’s lien mortgage for said amount
The subject matter of Lewis’ sale to the corporation on September 6, 1929, is stated to be 12 lots of ground in square 43, 17 lots in square 50, 16 lots in square 51, and:
"Sixteen certain lots of ground, situated in the Parish of Jefferson, City of Gretna, in that part thereof known as the New Addition of Mechanicham, in Bloch 58, bounded by Fourteenth, Cuvier and Fifteenth Streets and the upper line of original tract No. 4 as shown on plan by J. A. D’Hemecourt, Surveyor, above referred to, and designated by the Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9,10,11,12,13,14,15,16,17 and 18 on a plan by H. L. Zander, Parish Surveyor, above referred to, and according to which said lots measure as follows, to-wit: Lots Nos. 1, 2 and 3 adjoin each other and measure each 30 feet front on Cuvier Street, the same width in the rear, by a depth of 120 feet between equal and parallel lines; *403 Lot No. 1 forms the corner of Cuvier and Fourteenth Streets; Lots Nos. 6, 7, 8, 9 and 10 adjoin each other and measure each 30 feet front on Cuvier Street, same width in the rear, by a depth of 120 feet between equal and parallel lines; Lot No. 10 forms the corner of Cuvier and Fourteenth Streets; Lots Nos. 11, 12, 13 and 14 adjoin each other and measure each 30 feet front on Fourteenth Street, the same width in the rear, by a depth of 150 feet between equal and parallel lines; Lot No. 11 begins at a distance of 120 feet from the corner of Fifteenth and Cuvier Streets; Lots Nos. 15, 16, 17 and 18 adjoin each other and measure each 30 feet front on Fourteenth Street, same width in the rear, by a depth of 150 feet between equal and parallel lines; Lot No. 18 lies nearer and begins at a distance of 120 feet from the corner of Fourteenth and Cuvier Streets.” [Italics ours.]
It is to be seen at once the nature of the dispute between the parties. Lewis acquired 16 lots bearing particular numbers from Liberty Homestead, but in the sale to the corporation, the description starts by mentioning “Sixteen certain lots of ground” but later states that the lots bear numbers 1 through 18. Lots 4 and 5 are included.
Both sides admit, and it is perfectly obvious, that an error exists in the description in the sale to the corporation. Plaintiff contends lots 4 and 5 were included by number because of stenographic inadvertence, while on the other hand, defendants argue that the mention of “Sixteen certain lots” in the beginning must yield to that part of the description setting forth that the lots are eighteen in number.
No extrinsic evidence whatever was adduced to show in what particular the error was made or how it occurred. Each party theorized as to the reason for the discrepancy, but only conjecture is advanced, and we have no evidentiary basis on which to resolve the dispute. We are told that Lewis was the sole stockholder of The Ben L. Lewis Corporation, and it would be reasonable to suppose that his intention was to transfer all of his realty holdings to his corporation, including lots 4 and 5, which were not included in the Homestead sale and resale.
The attorney for plaintiff points out that all of the lots in square 58, except 4 and 5, are described by measurement, and it is claimed this constitutes strong circumstantial evidence that lots 4 and 5 were not to be included with the other 16 lots. The omission of the measurements of lots 4 and 5 would not be indicative that said lots were included erroneously because the description recites that the eighteen lots are those shown on a plan by H. L. Zander, Parish Surveyor. According to said plan square 58 is constituted of 18 lots among which are lots 4 and 5, the measurements of which are detailed on the plan. It is well settled that the annexation of a map of realty sold under a deed conveying it and reference thereto in the description given in the deed makes the map a part of the description as if it were actually copied in the deed. Werk v. Leland University, 155 La. 971, 99 So. 716. Whenever a plan is referred to as part of the description, all particulars appearing on such plan are regarded as fully set forth in the deed. Theriot v. Caffery, 160 La. 72, 106 So. 698.
Appellants’ counsel also argue that the acquisition appearing at the foot of the descriptions in the sale to the corporation:
“Being the same property which Ben L. Lewis acquired by purchase from Liberty Homestead by act before Roger Meunier, Notary Public, dated June 28, 1928 * * *”
demonstrates that the vendor intended to sell only what he had acquired from Liberty Homestead. The fact that such acquisition appears in the deed is of no help to the court in deciding this matter if for no other reason than that there is another discrepancy in the act as between the description and *404 the acquisition, which malees it manifest that the acquisition was not meant to control the subject matter of the sale. For instance, Lewis acquired 18 lots in square 50 from Liberty Homestead, whereas he transferred 17 lots to the corporation. A reference to property already adequately described in a deed as being the same property acquired by the vendor, neither enlarges the description to include lands not described nor to exclude any lands described therein. Such recitals in deeds are useful only to facilitate research on the land specifically described in the sale. W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184; Bender v. Chew, 129 La. 849, 56 So. 1023; Fortier v. Soniat, La.App., 143 So.2d 91; Dixie Pine Products Co. v. Switzer, La.App., 111 So.2d 518.
Where a specific number of lots are mentioned as being sold, such number must yield in the face of a particular description of a greater number of lots.
Under our codal law, the seller is bound to explain himself clearly respecting the extent of his obligations; any obscure or ambiguous clause is to be construed against him. LSA-C.C. art. 2474. Therefore, the construction of the language must be in favor of the vendee and against the vendor as to the extent of the property conveyed. Texas Company v. O’Meara, 228 La. 474, 82 So.2d 769; Union Bank v. Roy, La.App., 168 So.2d 716; Hulin v. Hale, La.App., 137 So.2d 709; Mestayer v. Cities Service Development Company, La.App., 136 So.2d 513, cert. denied Hanks v. Stutes, 85 So.2d 362. The error in the description must be construed against Lewis, the vendor, and those claiming under him.
Plaintiff, failing to show that he has any right, title or interest in lots 4 and 5, cannot question defendants’ tax titles, and, therefore, his suit must fall.
For the reasons above assigned, the judgment appealed from is affirmed.
Affirmed.