180 So.2d 775 (1965)
R. S. SAGRERA et al., Plaintiffs and Appellees,
v.
Whitney J. MOUTON et al., Defendants and Appellants.
No. 1511.
Court of Appeal of Louisiana, Third Circuit.
November 30, 1965.
Rehearing Denied December 22, 1965.
Writ Refused February 4, 1966.
Davidson, Meaux, Onebane & Donohoe, by J. J. Davidson, Jr., Lafayette, Broussard & Broussard, by Marcus A. Broussard, Sr. & Jr., Abbeville, for defendants-appellants.
Voelker, Ragland & Fox, by Frank Voelker, Jr., Lake Providence, Bush & Moresi, *776 by Toxie L. Bush, Jr., Abbeville, for plaintiffs-appellees.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This case was consolidated for trial and appeal with the following companion cases: Sagrera et al. v. Mouton et al., 180 So.2d 782; Sagrera et al. v. Mouton et al., 180 So.2d 783; and Sagrera et al. v. Albritton et al., 180 So.2d 783. We are deciding the companion suits on this date.
All of these actions were instituted by R. S. Sagrera and I. W. Sagrera, and the children of the deceased wife of one of the petitioners later were joined as parties plaintiff. Plaintiffs seek declaratory judgments decreeing them to be the owners of portions of four tracts of marsh land in Vermilion Parish. The instant suit and two others, bearing numbers 1512 and 1513 on our docket, were instituted against Whitney Mouton and Deussard Gaspard. The remaining suit, No. 1514, was instituted against William Louis Albritton and A. Sterling Albritton.
After trial, judgment was rendered by the trial court granting plaintiffs the relief which they sought, and the defendants in each suit have appealed.
On June 8, 1955, in conformity with the provisions of LSA-R.S. 41:131-41:139, the State of Louisiana sold several tracts of unimproved marsh land, located in Sections 33 and 34, Township 15 South, Range 1 East, in Vermilion Parish. The sales were made by public auction to the last and highest bidders.
Prior to that date, the land to be sold was divided by the state into about forty-eight separate tracts, and these tracts were designated as "Item 1" through "Item 48." A plat was prepared by the state of the tracts to be sold, and a copy of that plat was introduced in evidence as "Exhibit S-1." Each purchaser had before him a copy of that plat at the time of the sale. This plat showed that State Highway No. 26, which runs generally in a north and south direction, traversed the west half of Section 33, and that the tracts identified on that plat as Items 12, 13, 14 and 15 were located on the west side of and abutting the highway. Items 18, 19, 20 and 21 are shown on this plat as being located on the east side of and fronting on Highway No. 26.
The required notice of the sale was published in the official journal of Vermilion Parish, giving the item number and description of each tract, and giving the specific acreage of each. In the published notice of the sale, the item numbers and descriptions of each tract corresponded exactly with the plat which had been prepared by the state and which was furnished to the prospective purchasers. At the sale, the tracts were offered and bids were submitted on item numbers. The notice of sale provided that the sale was to be made for cash and for not less than $10.00 per acre.
At the sale, plaintiffs purchased Items 18, 19, 20 and 21, all of which were shown on the above described plat, which had been prepared by the state, as being located entirely on the east side of and abutting the highway. The defendants Mouton and Gaspard purchased Items 12, 13 and 14, all of which were shown on that plat as being located on the west side of and adjoining the highway. Item 15 was purchased by the Albrittons, and it also is shown on such plat as being located west of and adjoining the highway. In each patent which was issued to the purchasers following the sale the item number as it appeared on the state plat, as well as the description of the property, was shown.
More than a year after this sale had been completed, at least two surveys made by Noy O. Lewis, a civil engineer, revealed that the state had made an error in preparing the plat which was distributed to prospective purchasers at the above mentioned *777 sale, and that State Highway No. 26 actually traversed the east half of Section 33 instead of the west half of that section, as shown on the above described plat. The true location of the highway, as shown by these later surveys, was approximately one-fourth (¼) of a mile east of the line shown on the earlier state map.
The following sketch shows roughly the tracts of land involved in this litigation and the location of each with reference to the highway:

*778 The line shown on this plat, designated as "A"-"B," represents the west line of State Highway No. 26, as that highway was erroneously located on the plat prepared by the state, Exhibit "S-1." The true or actual location of the highway, about one-fourth (¼) of a mile east of that line, is also shown in the sketch. Plaintiffs who purchased Items 18, 19, 20 and 21, contend that they acquired all of the property located east of the line "A"-"B," and that that line constitutes the western boundary of the tracts which they purchased. Defendants contend that their title extends easterly to the actual location of State Highway No. 26, and that the existing highway constitutes the eastern boundary of their lands. The property in dispute in these suits, therefore, is all of the property located between the lines "A"-"B" and actual State Highway No. 26.
The trial judge concluded that plaintiffs acquired all of the property lying east of the line "A"-"B," and that defendants acquired the property lying west of that line. Judgment was rendered, therefore, which in effect decreed that line to be the boundary between the properties owned by plaintiffs and those owned by defendants.
The instant suit involves only the title to Items 12 and 21. At the sale, defendants Mouton and Gaspard acquired Item 12, which was described in the patent as follows:
Item No. 12:
"A certain tract of land being the NW ¼ of NW ¼, and that portion of the NE ¼ of NW ¼, lying 200 feet West of the Center line of State Highway No. 26, Section 33, Township 15 South, Range 1 East, consisting of 68.50 acres, more or less, in accordance with Kemper and Smith Survey of May 17, 1939. * * *"
Plaintiffs purchased Item 21 at the sale, and it was described in the patent which was issued to them as follows:
Item No. 21:
"A certain tract of land being the NW ¼ of NW ¼, Section 34, and the NE ¼ of NE ¼, and the NW ¼ of NE ¼, and that portion of the NE ¼ of NW ¼, Section 33, lying 200 feet East of the center line of State Highway No. 26, Township 15 South, Range 1 East, consisting of 119.50 acres, more or less, in accordance with Kemper and Smith Survey of May 17, 1939. * * *"
Case No. 1512 on our docket involves the title to Items 14 and 19. Case No. 1513 relates to Items 13 and 20. And, case No. 1514 involves the title to the two remaining tracts, Items 15 and 18. The description of each of these tracts was similar to the description above set out, and the determination made of the issues presented in the instant suit obviously would apply to each of the companion cases.
The "Kemper and Smith Survey of May 17, 1939," which is referred to in each description, was not introduced in evidence, but the testimony of witnesses establishes that this survey merely shows section lines and quarter section lines. State Highway No. 26 was not constructed until 1951 or 1952, so the Kemper and Smith Survey made before that time does not show the location of the highway. No difficulty has been experienced in locating the section and quarter section lines, so the Kemper and Smith Survey would be of little or no assistance in determining the issues presented here.
In spite of sincere arguments to the contrary, we think the evidence shows clearly that the plat prepared by the state incorrectly showed the location of State Highway No. 26, and that this highway actually traverses the east half of Section 33, whereas the plat prepared by the state shows that it traverses the west half of such section, about one-quarter of a mile west of the true location of the highway.
The defendants, in contending that the boundary line between these two tracts should be the existing State Highway No. *779 26, take the position: (1) That in buying the property, the parties intended to acquire frontage on that highway; and (2) that since the highway is an "artificial monument," the call in the patent referring to this artificial monument is entitled to more weight and importance than are the other calls of courses and quantity. Plaintiffs, on the other hand, argue: (1) That the primary intent of the parties was to acquire the number of acres described as being included in each of these items, regardless of the location of the highway; and (2) that the reference to the highway in the patents cannot be regarded as the controlling call, superseding all others in conflict with it, because there was a mutual error as to the location of the highway and the monument does not meet the other calls in the patents.
At the sale, the bids were submitted and accepted on an acreage basis, that is, the bidders submitted bids of a specific amount per acre for the tracts offered. After the bidding on a tract had been completed, the total amount due for the tract was computed by multiplying the number of acres by the amount of the bid per acre. The fact that this procedure was followed tends to support plaintiffs' argument that the parties intended primarily to acquire the number of acres described as being included in each of these items.
Item 12 is described in the patent as containing 68.50 acres, and defendants will acquire exactly that acreage if the east boundary of that tract is fixed along the line "A"-"B," as shown on the above sketch. Item 21 is described as containing 119.50 acres, and plaintiffs will acquire exactly that acreage if the west boundary is fixed along line "A"-"B." On the other hand, if the boundary between these two tracts is fixed along existing State Highway No. 26, as demanded by defendants, then plaintiffs would acquire substantially less acreage than that called for in their patent, and defendants would acquire substantially more than that called for in the patent which was issued to them.
We also note that the patent issued to plaintiffs purports to convey to them all of the northwest quarter of the northeast quarter of Section 33, without any reference to a highway, whereas, the patent which was issued to defendants does not purport to convey to them any part of that quarter-quarter section. If defendants' position is held to be correct, the result would be that defendants will acquire substantially all of that forty-acre tract (NW ¼ of NE ¼), although their patent does not purport to convey any part of it to them, and plaintiffs would acquire no part of the northwest quarter of the northeast quarter of Section 33, although their patent specifically conveys all of that quarter-quarter section to them.
As pointed out by defendants, the reference in the descriptions to State Highway No. 26 is a call of an artificial monument. The remaining calls are of courses and quantity. Since there was a mistake as to the location of the highway, however, the call relating to that highway cannot be reconciled with the other calls in the descriptions. If the call relating to the highway is held to be controlling, then it will be necessary to disregard the other calls relating to courses and quantity. On the other hand, if the calls relating to courses and quantity are given precedence, then it necessarily will mean that the call relating to the highway must be ignored.
There is no question but that plaintiffs and defendants thought they were purchasing property which abutted State Highway No. 26. And, since the bids were submitted on a per acreage basis, it is equally as certain that the parties intended to acquire the exact number of acres which were specified in the descriptions. The trial judge concluded that the call in the description referring to the highway was not controlling, that the reference to the highway "was merely added as an afterthought in an attempt to complete the description," that the transaction was not a sale per aversionem, but instead that it was a "sale by acres."
*780 Under our jurisprudence, the order of importance or value of the various calls which may be included in a description are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration in any case is the intention of the party or parties. Meyer v. Comegys, 147 La. 851, 86 So. 307. See also LSA-C.C. Articles 844, 854 and 2495; and Ganucheau v. Monnot et al., 130 La. 463, 58 So. 150; Michael v. State of Louisiana, Through Department of Highways, La.App. 2 Cir., 129 So.2d 587; Ryan v. LaPrairie, La.App. 2 Cir., 84 So.2d 854; and Consolidated Companies, Inc. v. Haas Land Co., Ltd., et al, 179 La. 19, 153 So. 6.
In Meyer v. Comegys, supra, a landowner had a plat made by a surveyor in which his 1500-acre tract of land was divided into about forty-six numbered lots. The plat gave no measurements to the lines of the several lots, but it did show that some of them bordered on a railroad and on a dirt road which were shown as running through the property, and the specific acreage of each lot was given in the plat. The plaintiff and the defendant's author-in-title purchased adjoining lots in this subdivision, and the plat prepared by the surveyor showed that the boundary line between these lots was the dirt road. A later survey revealed that this road had been incorrectly shown on the original plat, and that it actually was located 600 feet southeast of the line which was erroneously shown on the plat as being that road. No road was mentioned in the deeds, but in each deed the land was described by lot number, with specific reference to the above mentioned plat, and the acreage of each lot was clearly given to the fraction of an acre, both on the plat and in the deeds. The price paid for the lots apparently was based on so much per acre. Plaintiff instituted a petitory action against defendant, and the question presented was: "Which shall control, the line as shown upon the plat, or the location of the road upon the ground?" Our Supreme Court concluded that the lines shown on the plat, and not the actual location of the road, was to govern. In so holding, the court said:
"* * * Monuments of the character mentioned are allowed to control, for the reason that in cases where the line is uncertain, but approximately in a given location, these guides are more permanent and possess less of the possibilities of error incident to courses, distances, and area; but when the basis for the rule ceases, as where, admittedly, the monument does not meet the calls of the deeds, then it cannot control, and must give way to the weaker guides. There being no courses or distances given in this case, the acreage or quantity prevails, and both parties. receive thereby all that their deeds call for. * * *" (Emphasis added.)
In Theriot et al v. Caffery et al, 160 La. 72, 106 So. 698, the state patented some marsh land to plaintiffs' author-in-title, and a portion of the property conveyed was described as all of Section 10 "outside of Cote Blanche Island, * * * according to the official plat of the survey of said lands in the state land office." The specific number of acres being conveyed was included in the description. It was later determined that Cote Blanche Island had been erroneously located on the plat, the island actually being about one-half mile east of the spot where it was shown to be on such plat. The issue presented was whether the actual location of the island or its erroneous location as shown on the plat should control in determining what property plaintiffs acquired. The Supreme Court held that the lines shown on the plat controlled, and in so holding, it said:
"Plaintiffs rely upon the rule that, where a patent or deed calls for a natural object or monument as a boundary, such boundary must always be taken as permanent, the call for it overcoming every other conflicting clause in the description. The reason for the rule, which may be deduced from the language *781 of Chief Justice Marshall in Finley v. Williams, 9 Cranch [164], 167, 3 L.Ed. 691, is that the monument is immovable and durable in itself and of general notoriety. If the monument is not immovable and is not durable, however, the rule ceases, for the reason ceases.
And the principle will not be applied where, as here, the facts conclusively show that no island existed, or exists, at or near the place indicated on the plat, or where, as here, the attempted survey of the land in controversy is only fragmentary and incomplete. See Jeems Bayou Fishing & Hunting Club v. United States, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402. * * *
* * * * * *
Applying the foregoing rules and principles of construction to the instant case, and in order to fulfill the conditions of the Rightor & McCullom map as far as it is possible to do so, we are bound to establish the line of plaintiffs' title where it was located on said map; that is to say, on the crescent-shaped line running, approximately, through the middle of section 10. Under this decision, with due allowance being made for the erosion caused by the waters of Cote Blanche Bay, plaintiffs obtain all the acreage called for in the Carey patent. See White v. Leovy, 49 La.Ann. 1660, 22 So. 931."
Defendants call our attention to the following language in Meyer v. Comegys, supra, which they contend supports their position:
"* * * If the property (both that of plaintiff and defendant, or either of them) had been sold and described as fronting upon or bordering the public road by the descriptions in the deeds, the view that the road as it really exists should control as an artificial monument would undoubtedly be correct, and the quantity would have to yield; * * *."
This observation made by the Supreme Court is consistent with the established rule that where there is a discrepancy the call of an artificial monument in a description ordinarily is entitled to more weight than is a call of quantity. The court went on to explain, however, that the general rule did not apply in that case because the land was described according to a plat, by lot numbers, in which the acreage was clearly given to the fraction of an acre, and the property apparently was paid for at so much per acre. The court also reasoned that the plat, and not the road, should govern because the parties relied on the plat in purchasing the property and they believed they were actually acquiring the acreage shown on the plat.
Defendants argue that their position should be upheld because of equitable considerations, that is, because the land bordering on the highway is more valuable than lands not having such frontage, and defendants expected to acquire property which bordered on the highway. We realize that that is true, but if we should hold that for those reasons their title extends eastward to the actual location of the highway, then the same rule should be applied if the highway was found to be actually one-half mile, instead of one-quarter mile, east of the line shown on the plat, or even if the highway was one or two miles from the place where it was erroneously shown on the plat. Under such circumstances there clearly could be no justification, even on equitable grounds, for decreeing defendants to be the owners of much more land than they intended to acquire, while depriving plaintiffs of most, if not all, of the property which they intended to purchase.
We realize that in the descriptions contained in the patents involved in these suits there is no specific reference to the plat prepared by the state. In each patent, however, there is a specific reference to an item number, and this identifies the property conveyed with that plat. Also, it is apparent from the calls in the descriptions, and from the evidence, that this plat *782 was used as a basis for the sales, the patents and the descriptions, and that the error contained in the plat was carried over into the descriptions. Under those circumstances, we think the same rules which were applied in Meyer v. Comegys and in Theriot v. Caffery, supra, must be applied here.
As we have already pointed out, the general rule is that where there is a discrepancy, the call of an artificial monument will control over calls of distances, courses and quantity. In the instant suit, however, we conclude that this general rule does not apply, and that the call in each of the descriptions involved here relating to State Highway No. 26 does not control, because: (1) The sale was made by reference to a plat, and it must be presumed that the parties intended to convey or acquire property as shown by lines appearing on that plat, even though the location of an artificial monument is incorrectly shown on it; (2) the reference to State Highway No. 26 in the description cannot be reconciled with the actual location of the highway, whereas, the call relating to the highway would be consistent with all other calls if it is determined that the lines shown in the plat, rather than the actual location of the highway, should control; (3) the specific acreage of the tract conveyed is shown in the description; (4) the purchaser in each instance apparently paid a certain amount per acre for the property; and (5) it has been determined that the seller intended to convey and the purchaser intended to acquire the acreage set out in the description. Under these conditions, we think the lines shown on the plat which was used at the sale, rather than the actual location of the highway, must control here.
In the instant case we agree with the trial judge in his conclusion that the line shown on the plat which was prepared by the state as being the west line of State Highway No. 26, rather than the actual location of said highway, governs, and that the boundary between the property acquired by plaintiffs and that acquired by defendants should be fixed along that line.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., absent.