ELLIS, Judge
(dissenting).
Earl W. Owens, hereinafter referred to as appellee, was the owner of Lot 5 of Block 1 of the Gayle Land Company subdivision of Blocks 13 and 14 of the Robt. F. Evans Subd., and T. Miller & Sons Building Supply Company, Inc. were the owners *777 of the contiguous Lot 4 of the same subdivision. A dispute arose as to the boundary between the two lots which resulted in the parties each claiming ownership of six and a quarter feet along the common boundary between the two lots. As a result of this dispute the appellee filed a slander of title suit against the appellant and the latter, after filing answer, assumed the position of plaintiff in reconvention alleging that it was the owner of the strip of land in dispute, the same being the south six and one quarter feet of its Lot 4. Appellee of course claimed it was the owner of the strip of land which was its north six and one quarter feet of its Lot 5. Appellant recognized appel-lee’s acts of physical possession of the six and one quarter foot strip of land but alleged that it was entitled to be recognized as the true and lawful owner of the said property and as such entitled to the full and undisturbed possession thereof. Appellant further alleged: “ * * * that the boundary line between its property and the property of the plaintiff has never been fixed, either judicially or extra-judicially.” Appellant, after alleging that it was necessary that a judicial fixing of the boundary line be made in the manner prescribed by law, prayed that a duly licensed surveyor of Cal-casieu Parish, Louisiana, be appointed by the court to make a survey of the property in controversy, to ascertain their limits and make a proces verbal thereof in accordance with law, and after such proceedings had that there be judgment in its favor and against the appellee decreeing that the boundary between the two said properties be fixed as follows: “The line between Lots Four (4) and Five (5) according to the plat of the Gayle Land Company Subdivision referred to in plaintiff’s petition, and ordering the defendant to remove to the said boundary line the fence now encroaching upon plaintiff in reconvention’s property, for a distance oí Six and one-quarter (61/4) feet; ”. A surveyor was appointed to make the survey, however, his proces verbal not being in legal order and upon objection by appellant, his survey was rejected which resulted in an agreement between counsel that a survey made by Mr. D. W. Jessen, and Associates, Civil Engineers of Lake Charles, Louisiana on December IS, 1950 would stand or serve as the judicial survey and all formalities in connection with the judicial survey were waived by the parties.
Immediately prior to trial and on the same date, March 19, 1957 counsel for ap-pellee filed a special plea of estoppel and one of prescription of ten years under the provisions of Article 853 of the LSA-Civil Code. I deem it advisable to quote the main portion of this plea of estoppel and ten years prescription, to-wit:
“1. That the boundary between the estates of plaintiff and defendant were fixed by a survey according to a common title and if there is any error, which is denied, it was an error in the measure of the survey and this action is not truly an action in boundary (Opdenwyer v. Brown, 1924, 155 La. 617, 99 So. 482); that the part of the land on which the alleged error was committed, if there be any, was acquired by an adverse possession of ten years by Earl W. Owens, and, therefore, the action for the rectification of the boundary by T. Miller & Sons Building Supply, Inc. has prescribed under the provisions of Article 853 of the Civil Code.
“2. That T. Miller & Sons Building Supply, Inc. is estopped and its action is further prescribed by the prescription of ten years under the provisions of Article 853 since in 1943 the T. Miller & Sons Building Supply Inc. or its predecessor in title, Franklin L. Miller, went into possession of the property under a survey which was made for it or its predecessor in title by F. Schutts’ Son. That such entering into possession under the survey set forth herein constitutes an active acquiescence sufficient to estop T. Miller & Sons Building Supply, Inc., from now claiming beyond the line of possession dividing the parties to this action (See Kobler v. Koch, La.App.1941, 6 So.2d 55.)”
After trial judgment was rendered by the lower court in favor of the appellee “fixing *778 the boundary between Lots 4 and 5 of Block 1 of the Gayle Land Company Subdivision of Blocks 13 and 14, R. F. Evans Subdivision of the West Half of the Northeast Quarter of Section 8, Township ten, South Range Eight West, on the line as contended for by the appellee, said point being evidenced by iron stakes and an existing fence as well as the southern edge of the concrete ramp belonging to T. Miller & Sons Building Supply Inc. The Court further ordered, adjudged and decreed that the appellant’s demand for “rectification of the boundary is dismissed.”
From this judgment appellant has appealed.
Counsel for both parties in argument and brief agree that the effect of the judgment of the lower court was to sustain the appel-lee’s plea of ten years prescription under Article 8S3 of LSA-C.C., based upon the finding of fact that this line had been established by mutual consent and acquiescence therein by the appellee and appellant with visible bounds for more than ten years prior to the filing of suit. This plea of ten years prescription filed by the appel-lee just prior to trial was referred to the merits by the District Judge.
It is admitted that none of the formalities prescribed under Article 823 et seq. Title V., for fixing the limits and surveying of lands, in our LSA-Civil Code were followed or complied with in establishing the boundary between Lot 4 and Lot 5 belonging to the appellant and appellee, respectively.
The facts are relatively simple and not in dispute. Shortly prior to the purchase of Lot 4 by T. Miller and Sons, a partnership, which was the vendor of appellant, on the 23rd day of November, 1953, the partnership and prospective purchaser employed a Mr. Fred Shutts, surveyor of Lake Charles, Louisiana and the same one who made the judicial survey which was rejected because of a defective proces verbal herein, to make a survey of Lot 4 along with Lots 1, 2, 3, and 10, which were also purchased at the same time. This of course was a private survey made only for the prospective purchaser. On the 15th day of October, 1943, Henry C. Pittman and his wife, Ethel Pittman, born Fewell, purchased Lot 5 and on the 5th day of June, 1944 they sold Lot 5 to Leon Fewell and his wife, Daisy Fewell, and two or three months after Leon Fewell and his wife bought Lot 5 they put a fence around this lot on the lines as surveyed for appellant’s author in title, by Fred Shutts. On the 5th day of September, 1947 Fewell and his wife sold Lot 5 to Earl Owens, ap-pellee, and his wife, Carmel Owens. When Lot 5 was first purchased by the Pittmans it had a small building on it which was changed into a residence by the latter. This residence was torn down or moved off of the property prior to the filing of the suit, however, approximately 20 inches would have extended over the boundary between the two lots which the appellant contends is the correct boundary if it were still standing. During 1947 or 1948 the Miller partnership placed buildings on its property and commenced business operations at its present location.- During this time they assumed that the fence was on the line and shortly prior to or about 1950 either because of a dispute as to the boundary lines of the property which they owned to the rear of Lot 4 or because a member of their business firm noticed that the lines of the lots in the rear did not coincide as they should with the boundaries of Lot 4, that they employed Jessen and Associates, Civil Engineers of Lake Charles, Louisiana, to make a survey and as a result they found that the fence built in 1944 (1944) was some six and one quarter feet north of the common boundary line established by Mr. Jessen. This map also shows that the fence is approximately nine and a half feet out into the street. A concrete ramp was built in front of the office building of appellant which was located on Lot 4 about the year 1950 or 1951. This concrete ramp was built right up against and to the fence, however, the portion of the fence at this point was torn down or removed but the record fails to reveal who removed it. Based upon the above facts it is appellee’s contention that the line which *779 was privately surveyed in 1943 for appellant’s predecessor in title and upon which the fence was built in 1944 was established as the boundary between Lots 4 and 5 by mutual agreement and consent of appellant and his predecessor in title and the present owner, appellee herein, and his predecessors in title, Counsel for appellee in his brief states: “It is on the evidence of the occupation, acquiescence and consent to the establishment of a boundary that the case of Earl Owens must stand or fall/’ (Emphasis added.) Counsel for appellee then argued that as we are concerned with a boundary established by mutual agreement and cited Opdenwyer v. Brown, 155 La. 617, 99 So. 482, and Kobler v. Koch, La.App., 6 So.2d 55, and as appellant’s object is to show that this consent boundary was erroneously established or in error that appellant’s suit is therefore founded on the provisions of Article 853 of the LSA-Civil Code which reads as follows:
“If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.”

Hence, counsel for appellee in his brief states: “On the date of trial, Earl Owens filed an exception of prescription and es-toppel based on the portion of Article 853 establishing prescriptive title by adverse possession of ten years.”

Again in his brief on this same point he states: “The issues are thus confined to whether or not a boundary between Lois 4 and 5 of the Gayle Land Company Subdivision has been established by the prescription of ten years as provided by Article 853 and/or 3478 et seq of the Civil Code.” (Emphasis added.)
In the first place I do not believe that the facts in this case are sufficient to prove the establishment of a boundary between Lots 4 and 5 by a mutual agreement or consent and acquiescence of the appellee and appellant or any of their predecessors in title. We only have a private survey made at the instance of one party which, of course, is binding on none. We then have the erection of a fence apparently on this private survey line without any evidence whatsoever that the owners of Lots 4 and 5 at that time ever discussed in any way the boundary line between the two lots and without any evidence that the partnership of Miller and Sons who were the owners of Lot 4 at that time positively knew that the fence was erected on the line. Evidently the partnership assumed that the survey by Shutts, C. E., was correct and that the fence was erected on the line, however, there was no agreement of even the mention of a conversation between the parties in any testimony in this record. We believe that the statement by Judge Hardy as the organ of the Second Circuit Court of Appeal in the case of Hester v. Smith, 72 So.2d 549, 551, is particularly appropriate to the facts in this case, viz.: “The testimony in the record is not so much significant by reason of the facts established as for the failure to establish the one essential, namely that the 1902 fence was agreed upon, accepted as and intended to represent the boundary between -the Hester and Smith estates.”
The Hester case was much stronger than the case at bar in that the dividing fence in the former was built jointly by the immediate ancestors of plaintiff and defendant, whereas the case at bar there was not one single joint act of appellee and appellant or their ancestors in title toward the establishment of an agreeable boundary. The record only shows that possibly the parties thought that the survey was correct and that the fence was on the surveyed line but there is nothing to show an express intent on the part of either party to bind themselves jointly to an agreement that by the survey and building of the fence the definite and fixed boundary between the two lots was being established. See also Sharp- *780 less v. Adkins, La.App., 22 So.2d 692; Dufrene v. Bernstein, 190 La. 66, 181 So. 859 and cases cited therein.
However, in the event that I am wrong in my conclusion and as a matter of fact it has been proven that the boundary between the lots of the appellee and appellant were established by mutual consent, and assuming for the sake of argument that such were true, I will proceed to discuss and pass upon appellee’s plea of ten years prescription under Article 853 of the LSA-Civil Code.
The question before the court is whether prescription of ten years, as provided in LSA-C.C., Article 853, is applicable where the boundary had been fixed without a compliance with the formalities prescribed by the pertinent articles of our Civil Code and only by the mutual consent of the parties or their active acquiescence with a realization of the fact that they were actually consenting to the boundary and acquiescing in the location thereof. A review of the jurisprudence is highly important to a correct answer to the question posed.
In a case decided by our Supreme Court in 1887, viz., City of New Orleans v. Shakspeare, 39 La.Ann. 1033, 3 So. 346, on page 349, in which the court discussed the plea of prescription of ten years predicated on the provision of Article 853 of the Civil Code, at that time of 1825. The Court stated:
“The plea of prescription of 10 years is predicted on the provisions of article 853, Civil Code, which reads: Tf the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed be acquired by an adverse possession of ten years if the parties are present, and twenty years if absent.’ But in the case in hand we are dealing with a petitory action, and not with an action of boundary in which plaintiff would be seeking to rectify an erroneous survey. The article is found in the Code under the title, ‘Of fixing the limits and of surveying lands,’ and it must be construed with reference to other articles under the same title, which treat of the same subject-matter. The pivotal article under that title (article 833) provides that, ‘whether the limits be fixed judicially or extra-judicially, it must be done by a sworn surveyor of the state, who shall be bound to make a proces-verbal of his work in the presence of two witnesses, called for the purpose, who shall sign the proces-verbal with him. * * * ’ There is no pretense here that such fixing of limits preceded the location of the partition fence erected by the commissary of the municipality, at the time which he described as being ‘some time before the consolidation, (in 1852.)’ It is in proof that the surj veyor fixed no stakes, or made no marks, indicating the precise boundary line, and that the commissary built the fence ‘as near the line as he could recollect;’ and there is no proof, or even an intimation, that the work of the city surveyor, such as it may have been, was ever accepted by the parties as settling the division line. A similar question came up before this court in the case of Gray v. Couvillon, 12 La. Ann. 730, and similar views were therein entertained and enforced. We therefore conclude that the provisions of article 853 have no possible application to the present contention, in which the prescription of 30 years alone could be considered. Hence the plea of prescription of 10 years must also fail.”
I will next discuss the case of Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, which I believe must be interpreted, after a careful reading, as having answered the question posed emphatically and without equivocation in the negative. This case *781 came before the Supreme Court upon an application for a writ of review in the year 1899, which was prior to the time that any of the Courts of Appeal decisions were printed, however, luckily the Supreme Court gave a very full review of the facts and opinion of the Court of Appeal. In this case the plaintiff Williams alleged that he and the defendant were owners of contiguous pieces of property, the limits and boundaries between them had never been fixed and determined judicially, “although one or more ex parte surveys had been made of the line separating the tracts, * * * ”, and after the usual prayer for the appointment of a sworn surveyor, etc., he asked that the Court render a judgment establishing and fixing the true boundary lines and limits between the tracts. The defendant admitted that he and the plaintiff owned adjoining estates but alleged that the same had both been sold and purchased with special reference as to what was called in the answer the “Ragan Survey Boundary Line” which formed the division line between the two estates, and which had been recognized by all the parties at interest. It also appears that defendant objected to the acceptance of any survey made by or under appointment of the court and insisted that “the boundary be fixed according to a certain 'old hedge row line’ ”. “Defendant ultimately pleaded in his favor the presciption of 10 years; claiming that plaintiff’s action, under the pleadings and facts of the case, was for a ‘rectification’ of boundary, and is prescribed by 10 years on account of adverse possession for that time.” The District Court rendered judgment in favor of the defendant, decreeing the division line between the two tracts to be that fixed by the survey made by Ragan on the 10th day of August 1872. Plaintiff appealed to the court of appeal of the First Circuit and that court reversed the judgment appealed from and rendered judgment in favor of the plaintiff, fixing and establishing the boundary line between the tracts according to the Government subdivision as indicated in the clause of the deed, without reference to any survey previously made by Ragan, and .remanded the cause to the lower court, with instructions. (Emphasis added.)
Bernstein, the defendant in the case, then made an application to the Supreme Court for writs of review and the Supreme Court in outlining his contention of error stated: “He says that he specially complains that the judgment of the district court is in conflict with the established jurisprudence of the state, which he asserts to be as follows : ‘Where a boundary between contiguous estates has been fixed by a surveyor, or established and acquiesced in by the owners for over ten years, the right to have it rectified lapses, by express provisions of the Code; * * *’ ”,
The Supreme Court then quotes the language of the court of appeal in its decision and I will take the liberty of quoting what we believe to be the basic facts necessary to a proper understanding of the decision of the court of appeal and its positive and emphatic holding on the identical question that is now before this court. We quote:
“ ‘The material facts necessary to a proper understanding of this case may be briefly stated as follows: The parties both acquired the contiguous estates from a common author, who owned the whole property. The plaintiff’s title calls for specific lands, described by government subdivisions as the east half of the west half and west half of the east half of section 19, township 8, range 5, containing 303 acres. The sale to plaintiff was made October 8, 1872, and, according to the admission in the record, was recorded a few days afterwards. In this deed there are no limitations and restrictions. In the defendant’s deed the land is described as follows: ‘A certain tract of land, situated in the parish of Natchitoches, in sections 19 and 30, in township 8 range 5 west, containing 99.50 acres, more or less, according to a map made by A. V. Ragan, parish surveyor, of the Parish of Grant, hereto annexed, and made a part hereof, bounded North by lands of Isaac McMills, on the south by Clear bayou, on the east *782 by Bayou de Glaze, and on the west by land of J. R. Williams.’ The court survey indicates that the original section corner can be easily located, and it follows that, if the case hinged exclusively on the title deed, the case would be with the plaintiff, as there would be no difficulty, under the Code, in fixing the line. The plaintiff having the older title, calling for specific lands by government subdivisions, the lines would have to be run accordingly. * * * The only complication that appears in the matter is the fact that the common author was the owner of the remaining portion of section 19, on the east, and appears to have set apart a portion thereof to the defendant; and title to the same was afterwards made to him according to a survey made by agreement of the . defendant and his vendor. Some time prior to the sale to plaintiff, a survey was made by Ragan, in which survey the line was run on the western boundary, not according to the government subdivisions, but an arbitrary line was run so as to include one hundred acres. This arbitrary line the common author had the legal right to make.
“ ‘But the pivotal point in the case, on which the whole controversy is made to1 turn, in our opinion, is whether the plaintiff bought with reference to this arbitrary line; and, if not, does his acquiescence in this line of subdivision for more than ten years preclude his right of action to fix a new boundary line between the two estates, more in conformity with his deeds? The sole object of this action is to fix visible marks of separation of estates. * * * “So the question to be determined is, have these two contiguous tracts of land been separated, judicially or otherwise, and the. boundary line between the two determined according to law?” It might be important, in this connection, to state that what'is. known as the “Ragan Line” is indicated ón a! map made by Ragan, annexed to the defendant’s deed, and recorded in 1875. It'is. justly established that the fence which divides the two properties is on the Ragan line, and thát' both proprietors have looked to this as the dividing line since its construction, in 1875. The fence was originally constructed on the Ragan line by the defendant, and has occasionally been rebuilt and repaired by the plaintiff, but there is no evidence in the record that there was any agreement between the two proprietors that the fence or the Ragan line should be taken as the boundary line between said properties. * * * The line marked by the government survey follows the government subdivision called for by the plaintiff’s deed. So, to give the plaintiff the land according to the calls of his deed, we would have to encroach on the lands of the defendant 5.18 acres, — the land in dispute. The Ragan line, in section 19, is an artificial or arbitrary one, as clearly demonstrated by the map made by him. Bernstein accepted a deed in which the western boundary of his land in section 19 is referred to as “Williams’ Land”; and, under all the authorities, when he accepted a deed bounding him by another land, the land referred to in the deed became a muniment, and controlled distances. The contention of' the plaintiff is that he purchased the land included in the calls of his deed, without reference to any particular survey, and without mention being made in the act of sale of any circumstances which would qualify or restrict his right to demand the whole quantity embraced within the calls of his deed; the defendant contending that the plaintiff took the land with full knowledge of the Ragan survey made by the common author, and has recognized .the same as the boundary line between.said estates ever since 1873. As we have .said, there are no restrictions or limitations, in plaintiff’s deed, or reference to any survey made by Ragan; and it remains to consider whether anything has been done by the plaintiff looking to the Ragan line as the true boundary, and by means of which he has lost the right to recover the whole of the property included or embraced within the calls of his deed,— in other wor.dsJ whether there has been such a fixing or establishment of the boundary line as to operate as a basis of the prescription of 10 years, as contemplated by article *783 853 of the Revised Civil Code. If his right of action is not barred by the prescription •of 10 years, according to our construction of the law, he is legally the owner of the whole of the land embraced within the calls of his deed, and the boundary line should be adjusted accordingly. [Emphasis add-ed.]
“ ‘The main question, in our opinion, that underlies a proper solution of this case, is whether the erection of a division fence by ■two adjoining proprietors, and each looking to this as the division line for more than -ten years, constitute the establishment of ■the true boundary, in the absence of any agreement, or otherwise, that the site of the fence should constitute the true boundary between the two properties; and, if this state of facts should constitute the fixing of a boundary, within the contemplation of articles 833 and 853 of the Revised ■Civil Code, would any action in rectification of the boundary thus made be barred by the prescription of ten years? We must •confess that under the facts and circumstances, viewed in the light of the judicial -expression of our supreme court, the question is not free from difficulty. The equities -of the case seem to preponderate in favor •of the defendant, but the articles of the •Code on the subject are positive and direct. If the boundaries had been fixed according to a common title, or according to different ■titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed be acquired by an •adverse possession of ten years, if the parties are present, and twenty years, if absent. Rev.Civ.Code, art. 853. Whether the limits be fixed judicially or extrajudicially, it must he done by a sworn surveyor of the state, who shall be bound to make a proces verbal of his work in the presence of two witnesses called for the purpose, who shall sign the proces verbal with him, or mention shall be made of the causes which prevented them from signing. Id. Art. 833.’ [Emphasis added.]
“The court then takes up and discusses the cases of Broussard v. Duhamel, 3 Mart., N.S., 11; Babineau v. Cormier, 1 Mart. N.S., [456], 457; Bourguignon v. Boudousquie, 6 Mart., N.S., [697], 700; Frederick v. Brulard, 6 La.Ann. 382; Lemoin v. Monda, 9 La.Ann. 515; Williamson v. Hymel, 11 La. [182], 183; Gray v. Couvillon, 12 La.Ann. 730; Zeringue v. Harang’s Adm’r, 17 La. [349] 350, and City of New Orleans v. Shakspeare, 39 La.Ann. 1033, 3 So. 346, — closing with an extract from the latter case in which the court says: ‘Article 853 is found in the Code, under the title of “Fixing the Limits and of Surveying the Lands”; and it must be construed with reference to other articles of the Code under the same title which treat of the same subject-matter. The pivotal article under that title (article 833) provides that, whether the limits be fixed judicially or extrajudicially, it must be done by a sworn surveyor of the state, who shall be bound to make a proces verbal of his work in the presence of two witnesses called for the purpose, who shall sign the pro-ces verbal with him. There is no pretense here that such fixing of limits preceded the location of the partition fence erected by the commissary of the municipality at the time which he describes as being some time before the consolidation in 1852.’
“The court of appeals proceeds to say: 'The plain purport of these adjudications, and the only conclusion to be drawn therefrom, is that, unless the boundary lines between the two contiguous estates has been fixed in conformity with article 853 of the Revised Civil Code, that an action in rectification is only prescriptible by thirty years. Even if the lines be fixed extrajudicially by a sworn survey, or after due notice to the parties, and no opposition being made, the parties do not thereby lose their right of resorting to a court of justice to rectify the operations, if they think it for their interest. Id. art. 839. Lacour v. Watson, 12 La.Ann. 214. The right of action, however, to rectify a mistake of this charac *784 ter, is barred by the prescription of ten years. The theory and policy of the law is that the survey by a sworn surveyor is an official act, and the proces verbal is written evidence of the proper location of land■ in accordance with the title papers of the parties, and is sufficient to translate the ownership of property, cutd serve as the basis of prescription. Applying the principles of law thus announced to the uncontested facts of the case, we are led to the conclusion that the plaintiff’s right of action to establish a permanent boundary line between his property and that of defendant is not barred by the prescription pleaded. [Emphasis added.]
“ ‘ * * * There is nothing to show that an adverse possession has produced any difference in plaintiff’s situation, so as to defeat his right by prescription. While it was perfectly competent for the common author to establish an arbitrary boundary between two tracts, yet, when she sold specific tracts without any mention being made in the act of sale of the boundary thus established, it is perfectly clear that the purchaser is not bound by any such ex parte survey made by the defendant, or by one made by him and the common author. Sprigg v. Hooper, 9 Rob. (La.) 248. If there be a written declaration, fixing and establishing the line contended for by the defendant by the common author, by which it was declared that the Ragan line should form the boundary between the two properties, it would not have been binding on the plaintiff, unless the same had been duly recorded, or otherwise brought home to the plaintiff by recitals in the deed to that effect. Kittridge v. Landry, 2 Rob. (La.) 72.’”
Chief Justice Nicholls as the organ of the Supreme Court has the following to say with regard to the decision of the Court of Appeal which interprets as emphatically and absolutely approving the main holding of the Court of Appeal on the question of the applicability of the ten year prescriptive period for the rectification of a boundary under Article 853 of the LSA-Civil Code, viz.; that unless the boundary line between the two contiguous estates has been fixed in conformity with Article 853 of the LSA-Civil Code, that an action in rectification is only prescriptible by thirty years.
“I have examined the case carefully, to see whether the relator has made such a showing as would justify this court in issuing a writ of certiorari to the court of appeals. I think he has not, but that the judgment complained of is correct. The character impressed upon the action by plaintiff’s pleadings is not that of any action for a rectification of boundaries, as relator asserts, but an action of boundary, pure and simple. An action of that character is not open to a plea of prescription. Rev. Civ.Code, art. 825. The action may be repelled by showing that the boundary line between the two properties had been settled by judicial decree, or by a survey made by a surveyor in conformity to the requirements of the Revised Civil Code. A line, however, even when established between th'e parties by such a survey, yields to a demand, under an allegation of error, for the rectification of the line, unless the party resisting the rectification should allege and show an adverse possession of 10 years under the erroneous line. The mere fact that parties owning adjoining property have cultivated lands up to a certain line, ‘or up to a certain fence, built either by one or both, or built by one and repaired by the other, does not per se evidence an adverse possession up to the line or fence, or an acquiescence in or recognition of an adverse ownership. Neighbors constantly run up fences within or beyond the boundary lines, and join their fences; doing so with the knowledge and understanding that such acts are merely temporary, and done subsidiarily to, and with reference to, the right of both to ultimately ascertain and fix rights by an action of boundary, or through a formal, legal survey. Until this happens, the lands held by each are in the occupancy, and not in the adverse possession, of either, — certainly so in the ab *785 sence of a clear and direct claim advanced of adverse ownership and possession. In the absence of such a claim, the other party is justified, inasmuch as matters as to boundary are resting in abeyance, subject to future adjustment through an action of boundary. * * * ” (Emphasis added.)
It would be within sound logic to state that because the Supreme Court did not specifically disagree with the quoted holding of the Court of Appeal that it must agree, however, I believe that the Supreme Court specifically and absolutely agreed when it said: “A line, however, even when established between the parties by such a survey, yields to a demand, under an allegation of error, for the rectification of the line, unless the party resisting the rectification should allege and show an adverse possession of 10 years under the erroneous line.” This statement is in absolute accord with the statement of the Court of Appeal that the theory and policy of the law is that the survey by a sworn surveyor is an official act, and the proces verbal is written evidence of the proper location of land in accordance with the title papers of the parties, and is sufficient to translate the ownership of property, and serve as the basis of prescription. In other words, there can be no adverse possession so as to defeat an action of rectification within the ten year period prescribed under Article 853 unless there has been a survey in accordance with the other articles dealing with the same subject- matter, and in the main Article 833 of the LSA-C.C. According to this case it squarely holds that the fixing or establishment of a boundary by the contiguous owners without going through the formalities prescribed under our Civil Code, even though a fence is built thereon and the parties look to this as the dividing line, and even though the plaintiff has kept this fence in repair for a period of more than ten years, would not subject an action of rectification by one of the parties to a successful plea of ten years prescription under Article 853. The party resisting the rectification could not show a legal adverse possession of ten years under the alleged erroneous line because the failure to establish the boundary by an official act and without written evidence of the proper location of the line in accordance with the title papers of the parties, deprived the act of boundary establishment of an all important and necessary legal pre-requisite, viz., the sufficiency to translate the ownership of the property in dispute, so as to serve as a basis of ten years prescription under Article 853.
Pursuing the subject further, Articles 832, LSA-C.C., 833 and 853 of our LSA-Civil Code, were first incorporated in the Code of 1825, and this is also true of Article 3479 of our LSA-Civil Code which deals with conditions necessary to good faith prescription, one of which is common to a pleader of ten years prescription under Article 853 or 3478 as specifically required under Article 3479, viz., a title which shall be legal, and sufficient to transfer the property. After a boundary has been established as required by law for more than ten years if the parties were present, or twenty years if absent, at the establishment of the boundary. Article 853, LSA-C.C., a plea of ten years prescription under Articles 3478-3479, LSA-C.C. would be available to either of the parties or their successors in title in an action to deprive them of the ownership (petitory action) of any land beyond the limits of their original title acquired in the extrajudicial boundary establishment.
I feel certain that the case of Williams v. Bernstein, supra, completely answers the question which we have under consideration in the negative, that is, that the prescriptive plea under Article 853, R.C.C. cannot be successfully urged by the appellee herein as the establishment of a boundary extrajudidally between contiguous owners by oral private agreement, or .mutual consent, or the building of a common fence by the contiguous owners, and the acquiescence in a visible boundary for more than ten or twenty years was not sufficient to translate the ownership of property, and *786 serve as the basis of prescription. An action for rectification of a boundary so established is only prescriptible by thirty years.
There are later cases in our jurisprudence which hold and others which approve of such holding, that the prescription of ten years, as provided in LSA-C.C. art. 853, is applicable where the boundary has been fixed by the consent of the parties or by their active acquiescence, with the realization that they were actually consenting to a boundary and acquiescing in its location. By consent of the parties these cases mean without compliance with Article 833 and other controlling articles on the same subject matter in our civil code. See Blanchard v. Monrose, Orleans Ct. of App., 12 La. App. 503, 125 So. 891; Weathersby v. Hogsett, Orleans Ct. of App., 17 La.App. 1, 131 So. 511; Simmons v. Miller, La.Ct. of App. 1st Cir., 170 So. 521; Picou v. Curole, La.Ct. of App. 1st Cir., 44 So.2d 354; Arabie v. Terrebonne, La.Ct. of App. 1st Cir., 69 So.2d 516; Jones v. Dyer, La.Ct. of App. 1st Cir., 71 So.2d 648; Le Blanc v. Barrios, La.Ct. of App. 1st Cir., 89 So.2d 447; James v. Le Blanc, La.Ct. of App. 1st Cir., 95 So.2d 175; Sessum v. Hemperley, 233 La. 444, 96 So.2d 832. In none of the cited cases was the prescription of ten years, as provided in LSA-C.C. Article 853 sustained because the boundary had been fixed by the consent of the parties by their active acquiescence with the realization of the fact that they were actually consenting to a boundary and acquiescing in its location. Therefore, if I am correct in my belief that the prescription of ten years provided in Article 853 is not applicable in such a case no harm has actually been done by such a ruling.
On the other hand we have cases which have steadfastly sustained the view expressed in Williams v. Bernstein, supra, that the prescription of ten years, as provided in R.C.C. Article 853 is not applicable and cannot be sustained unless the boundary has been fixed by a surveyor in accordance with Article 833 and other articles under Title V “Of Fixing The Limits, And Of Surveying Of Lands”. Carr v. Geoghegan, Orleans Ct. of App., 11 La. App. 74, 123 So. 371. This case will be discussed hereafter. Gray v. Couvillon, 12 La.Ann. 730; Harmon v. Dufilho, La.Ct. of App. 1st Cir., 19 La.App. 222, 139 So. 530; Brumfield v. Cryer, La.Ct. of App. 1st Cir., 154 So. 662; Anding v. Smith, La.Ct. of App. 2nd Cir., 189 So. 362; Hunter v. Forrest, 195 La. 973, 197 So. 649. Pan American Production Company v. Robichaux, 200 La. 666, 8 So.2d 635. I deem it important to quote from the last cited case as it was decided by the Supreme Court subsequent to the cases which first held that the ten years prescription under LSA-C.C. art. 853 was applicable in cases where the boundary was fixed or established by the parties themselves extrajudicially without observing the formalities prescribed by law, or the active acquiescence of the parties in the location of the boundary. The first case in which we found a recognition of such a view was in Carr v. Geoghegan, supra, and the first case which squarely enunciated the applicability of the prescription of ten years, as provided in LSA-C.C. Article 853, to a boundary that had been fixed by the parties themselves, that is, by the consent of the parties ex-trajudicially or by their active acquiescence in the location of said boundary was Blanchard v. Monrose, supra, both of which will be discussed somewhat in detail hereinafter. I quote from Pan American Production Company v. Robichaux, supra, [200 La. 666, 8 So.2d 639]:
“According to counsel’s own view, the so called boundary line was in reality fixed by the parties themselves. It was fixed extra-judicially without observing the formalities prescribed by law.
“Counsel for Robichaux grounds his plea of prescription on Article 853 of the Revised Civil Code, which reads as follows:
“ ‘Errors in Survey; Cured by Possession of Ten or Twenty Years. If *787 the boundaries have been fixed according to a common title, or according to different titles, and the surveyor has committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present and twenty years, if absent.’
“But the provisions of this article do not apply in cases of this kind. In Barker v. Houssiere-Latreille Oil Co., 160 La. 52, at page 64, 106 So. 672, at page 676, this court said:
“ ‘In order to sustain the plea of prescription of 10 years under article 853, it is necessary not only to show a possession of 10 years, but also that the possession has been held by boundaries fixed by a surveyor in accordance with article 833 and consecutive articles of the Civil Code, requiring the work to be done by a sworn surveyor of the state, notice to the parties, examination by the surveyor of title papers, proces verbal of survey, etc.’ Citing Gray v. Couvillon, supra.”
In Carnahan v. McCoy, La.Ct. of App. 2nd Cir., 49 So.2d 78, 79, with Judge Hardy as the organ of the court, it was held:
“We are able to make brief disposition of defendant’s pleas of the prescription of ten and twenty years. As was clearly set forth by Mr. Justice Hamiter during his tenure on this Court, in Anding v. Smith, La.App., 189 So. 362, 364:
“ ‘The pleas of prescription of ten and twenty years are apparently not seriously urged. In all events, we find no merit therein. They are urged pursuant to the provisions of article 853 of the Louisiana Civil Code. * * *.’”
* * * * * *
“ ‘The record in the instant case does not disclose that the boundaries contended for by defendants have ever been fixed in accordance with the mentioned requirements.’
“The exact conditions obtained in the case now before us. Defendant contends for the allowance of his plea of prescription under Article 853, but there is no showing that the boundary upon which he insists is one which has been established by a surveyor in accordance with the requirements of Article 833-839 of the Civil Code. Neither do we feel that the provisions of Article 3478, in which reliance is also placed by counsel for defendant, is applicable since it requires acquisition of an immovable in good faith and just title. Defendant has shown no title to the property in dispute.”
Again in Rock v. Varuso, Orleans Ct. of App., 61 So.2d 741, 742, with Judge McBride as the organ of the Court it was held: “Even if this were a boundary action, it would not be barred by ten or twenty years adverse possession, for the reason that such prescription applies only where possession has been held pursuant to boundaries formally established by a surveyor in accordance with LSA-C.C. art. 833 et seq. Ford v. Pantallion, La.App., 20 So.2d 574; Kobler v. Koch, La.App., 6 So.2d 55; Anding v. Smith, La.App., 189 So. 362.”
The holding of the Second Circuit Court of Appeal in Carnahan v. McCoy, supra, and Anding v. Smith, supra, was reaffirmed by our brethren of the Second Circuit in Hester v. Smith, La.App., 72 So.2d 549.
The holding of the Orleans Court of Appeal in Rock v. Varuso, supra, was reaffirmed in Christen v. Coulon, La.App., 94 So.2d 47, 53 as follows:
“Defendant claims he built his fence in August, 1943, along the boundary line and that the said fence still stands. He pleads ‘the cause of action stated in plaintiffs’ petition prescribed in August of 1953.’
“As the basis of this plea defendant is evidently relying on the provision of LSA-C.C. art. 853 which read as follows:
“ ‘If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be ac *788 quired by an adverse possession of ten years, if the parties are present, and twenty years, if absent.’
“That codal article has no application whatever to this case. There never was any prior survey by a sworn surveyor fixing the contested boundary, and therefore, there was no adverse possession by defendant under a survey.
“In Barker v. Houssiere-Latreille Oil Co., supra, we find the following language:
“ ‘In order to sustain the plea of prescription of 10 years under Article 853, it is necessary not only to show a possession of 10 years, but also that the possession has been held by boundaries fixed by a surveyor in accordance with article 833 and consecutive articles of the Civil Code, requiring the work to be done by a sworn surveyor of the state, notice to the parties, examination by the surveyor of title papers, proces verbal of survey, etc. Gray v. Couvillon, 12 La. Ann. 730.’
“The plea is without merit.”
Let us see if possible how the doctrine that the ten years prescription set forth in Article 853, LSA-C.C. was applicable where the boundary was fixed by the parties themselves extrajudicially without going through any of the requisites set forth in our codal articles or to a boundary in which the parties actively acquiesced first came into our jurisprudence. It stemmed from a misinterpretation of what the Supreme Court said in the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 484 as well as what was said by the Supreme Court in Williams v. Bernstein, supra. A mere reading of the Opdenwyer case will reveal that it did not contain any question touching upon the application of a ten or twenty years prescriptive period under article 853, R.C.C. The Supreme Court generally discussed the law with regard to boundaries but the real meat of the case involved the prescription of 30 years referred to in an interpretation of Article 852 R.C.C. which provided for prescription beyond one’s title “or for more than it calls for, provided it be by 30 years possession.”
The Court therefore held:
“It is our firm conviction that the public interest requires that boundaries established for more than 30 years should not be disturbed; and we think the law so provides
In the Opdenwyer case in discussing generally the provisions of our civil code as to the fixing of boundaries judicially or extrajudicially, by way of obiter dictum as the suit was in nowise one to rectify an error, the Supreme Court stated: “But if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed. R.C.C. Art. 853 and manifestly the action to rectify boundaries lies only when these have been fixed extrajudicially; * * * (Emphasis added.)
In Carr v. Geoghegan, supra, we find the following:
“The serious defenses, however, are a plea of prescription of 10 years and a contention that there can be no boundary suit, where there has been a visible separation of the properties by a hedge or fence, as there was here. In support of his plea of prescription of 10 years, defendant alleges that he and his authors in title have had actual physical possession of the small strip of land in question for more than 10 years, and that his possession has been under color of title.
• “In support of the contention that there can be no action in boundary where there has been a visible separation of the property, defendant calls our attention to the case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482, in which the Supreme Court said: ‘As long as there exist no physical bounds, whether because none have ever been placed or because those once placed have disappeared, the action to place or replace them cannot be prescribed against; *789 for every one is entitled at all times to have his estate separated from that of his neighbor. R.C.C. art. 825 but if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within ten years, or it will be ( prescribed. R.C.C. art. 853.’
“That the Opdenwyer case can afford no comfort to defendant becomes evident when we focus our attention on the words ‘which have been placed there by consent.’ We can well understand that, if owners of contiguous estates agree that a boundary shall he along a certain line, and thereafter, in conformity with that agreement, there is erected a fence or a hedge is planted, the right of either to bring an action in boundary is thereby cut off. Here, however, the evidence shows that there was no such agreement, either expressed or implied, or by acquiescence." (Emphasis added.)
In the first place I do not believe that in the Opdenwyer case the supreme court held that there could be no action in boundary where there had been a visible separation of the property. The Court held in that case that boundaries established for more than thirty years should not be disturbed, and under article 852, R.C.C. which deals with 30 years possession the authors of our code meant: “That where a tract of land had been possessed under visible bounds for 30 years, such visible bounds should prevail over the ideal bounds called for in the titles.” (Emphasis added.)
Secondly, I do not place the same interpretation upon the meaning of the words “which have been placed there by consent” as that given them in the Carr case as above quoted.
As previously stated the statement of our Supreme Court in the Opdenwyer case to the effect that “ ‘if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed. R.C.C. art. 853,’ ” was a part of a general discussion of the subject of boundaries as set forth in the civil code. The supreme court was merely condensing the contents of Articles 832, 833 and Article 853 of our Civil Code. Article 832 provides that boundaries “may be made extrajudi-cially and by mutual consent,” * * *. It is well settled that Articles 832 and 853 of our LSA-Civil Code are expressly subject to the provisions of Article 833, LSA-C.C. In other words, where the limits are fixed extrajudicially by mutual consent of the parties “it must be done by a sworn surveyor of this State, who shall be bound to make a proces verbal of his work in the presence of two witnesses, called for the purpose, who shall sign the proces verbal with him, or mention shall be made therein of the causes which prevented them from signing.” There is no reason to believe that the Supreme Court meant to deviate from its own well settled jurisprudence or the express provisions of the articles of our Civil Code with regard to the fixing of boundaries to the effect that the boundary may be established extrajudicially by consent in conformity with the express provisions of Article 833, and when this has been done and visible bounds actually exist, any action to rectify any alleged error in the location of such a boundary must be brought within ten years, if the parties are present or twenty, if absent. The court was not concerned with the boundary fixed and established extrajudicially imder Article 832 or 833, nor with an action to rectify an alleged error in a boundary fixed in conformity with the articles of the code which action prescribed within ten or twenty years under the provisions of Article 853. It would be most illogical to assume that the court under such conditions and in such a casual way would mean to change its own jurisprudence. It is true in this case that the Supreme Court cited cases which it concluded supported a holding that an estate may have well established limits fixed otherwise than by a survey, however, an examination of the cases cited will reveal that in not one did the court hold that the prescription provided in Arti- *790 ele 853 was applicable to a boundary established other than as prescribed by the articles of our Civil Code.
In Blanchard v. Monrose, supra, we find the first specific holding that the prescription of ten years as provided in R.C.C. article 853, is applicable not only to boundaries fixed in accordance with the provisions of our civil code but also to a boundary that has been fixed by the consent of the parties or by their active acquiescence with a realization of the fact that they were actually consenting to a boundary and acquiescing in the location thereof and that the mere passive failure to object to the location of a fence cannot form the basis of a plea of prescription of ten years. In arriving at this conclusion the court stated [12 La.App. 503, 125 So. 892]:
“For a good many years the courts seemed rather undecided as to whether a boundary could be fixed otherwise than as provided in the Code. Later, however, it seems to have been well established that, if two adjacent property owners agree, éven extrajudicially, that the boundary between their properties shall be a certain line, and, as a result of that agreement, a fence is erected on that line and a period of 10 years is allowed to elapse, the right to bring an action to correct the boundary no longer exists. Opdenwyer v. Brown, supra; R.C. C. art. 853.
“For some time we found it difficult to understand the decision of the Supreme Court of this state in Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, in which the court said:
“ ‘The mere fact that parties owning adjoining properties have cultivated land up to a certain line or up to a certain fence built either by one or both, or built by one and repaired by the other does not per se evidence an adverse possession or an acquiescence in, knowledge of or recognition of an adverse ownership or adverse possession. Neighbors constantly run up fences within or beyond the boundary lines or join fences, doing so with the knowledge and understanding that such acts are merely temporary and done subsidiarily to and with reference to the right of both to ultimately ascertain and fix rights by an action of boundary, or through a formal, legal survey. Until this happens such land is held in ‘occupancy,’ and not in ‘adverse possession’ — certainly in the absence of a clear and direct claim advanced of adverse ownership and possession.’
“We are now of the opinion that the decision in the Williams Case is not inconsistent with that in the Opdenwyer Case, and that all that the court intended to hold in the Williams Case was that, in order for the erection of a consent fence to form the starting point of a prescriptive period, it must appear that the consent to or acquiescence in the erection of the fence was deliberate and intentional and not merely passive. In other words that, if one neighbor allowed a fence to be erected, he would not later be estopped to contest the location thereof unless the circumstances showed that he fully understood that the fence was being erected as a boundary and not as a mere temporary barrier.
******
“It seems then that, athough the Supreme Court has definitely decided that boundaries may be fixed by mere consent of the parties, and that such consent will form the basis of the prescription of 10 years, such consent must be more than mere passive acquiescence in the construction of a fence and must, in fact, be affirmative recognition of the fence as the boundary line.
******
“It, therefore, appears to us that the prescription of 10 years, as provided in R.C.C. art. 853, is not applicable unless the boundary has been fixed by a surveyor and an error has been committed, or unless the boundary has been fixed by the consent of the parties or by their active acquiescence with a realization of the fact that they were actually consenting to a boundary and acquiescing the location thereof, and that the *791 mere passive failure to object to the location of a fence cannot form the basis of a plea of prescription of ten years.”
With the greatest respect to the Organ of the court, and the then members, I believe that the holding in this case, as well as, in the Carr case, supra, was due to a misinterpretation or misunderstanding of what the Supreme Court meant as previously discussed in detail in Opdenwyer v. Brown, supra.
As to the court comment upon the quotation from the case of Williams v. Bernstein, which we have heretofore thoroughly discussed, the same quotation was discussed by this court with the late Justice LeBlanc as its organ when a member of this court in the case of De Bakey v. Prater, La.App., 147 So. 734, 736:
“The prescription of ten years is, of course, founded upon a different theory. It begins only when the line has been established judicially or extrajudicially by a sworn surveyor, in accordance with C.C. art. 833. Article 853 grants the right to rectify such a line within ten years, except where judicial fixing has become res adjudicata. It is this prescription about which the court speaks in Williams v. Bernstein, 51 La.Ann. 115 (25 So. 411), where it is said that mere use and occupancy of the land up to the fence built by both parties does not evidence adverse possession, since this may be intended as temporary and with reference to the right of both to fix ultimately the correct line. This expression applies to the prescription which begins only with a definite fixing of the line, namely, to the shorter prescriptive period of ten years. Possession for the longer period of thirty years, in good or bad faith, limited by a visible partition between the two dominions, does not support the same presumption that the visible partition was intended as temporary. On the contrary, it supports the presumption that the proprietors by such long-continued use intended that it should be permanent.”
I believe that the court in the last cited case placed the right interpretation upon the statement of the supreme court in the Williams case, that the mere use or occupancy of land up to a fence built by both parties does not evidence adverse possession sufficient to support the ten year prescriptive period provided in Article 853, for the latter prescription begins only with a definite fixing of the line in accordance with the provisions of our code.
The holding in the cases cited previously, which as stated held, or cited such a holding with approval, that the prescription provided in Article 853 was applicable to a boundary established merely by consent of the parties or their active acquiescence, stemmed from the holding in the Monrose case, supra.
It is necessary that I discuss one of these cases, viz., Sessum v. Hemperley, supra, as it was decided by our Supreme Court. In this case the Supreme Court stated [233 La. 444, 96 So.2d 841]:
“It is fundamental that resort to an action in boundary has for its objective the physical separation of one estate from another and to thereby mark the limits of each by visible bounds. LSA-C.C. Art. 826. The object sought to be attained may be accomplished either judicially or extra judicially. LSA-C.C. Art. 832.
“An action in boundary may be resorted to when any one of the following three situations exists: (1) where a boundary line has never been established to separate the contiguous estates; (2) where although once established or the estates separated, the physical bounds have been completely eradicated; and (3) where there has been an incorrect fixing of the boundaries. LSA-C.C. Arts. 823, 853.
“In the first instance, where the boundary lines have never been established or the estates separated, it is well settled that under LSA-C.C. Art. 845, the boundaries must be fixed according to the respective *792 titles of the parties, and in the absence of titles on both sides, possession governs. In the second instance, where the boundaries have once been fixed and have become eradicated, such boundaries must be replaced as they formerly stood. Zeringue v. Harang’s Administrator, 17 La. 349; Opdenwyer v. Brown, 155 La. 617, 99 So. 482. In the third instance, where boundaries have been incorrectly fixed, the cause of action is to rectify or correct boundaries established in error. Williams v. Bernstein, 51 La.Ann. 115, 124-125, 25 So. 411. It is well settled that in the first and second instances the action is imprescriptible, the theory being that every land owner is entitled to have his land separated from adjoining lands, its limits ascertained and fixed. LSA-C.C. Art. 825.
“In the third instance, where there exists actual visible bounds which have been extra-judicially incorrectly or fixed by the consent of or the active acquiescence of the adjacent land owners, an action in either case to rectify an alleged error in the location of the boundary line must be instituted within ten years under the penalty of being prescribed. LSA-C.C. Art. 853. The consent as to visible bounds made essential under said article to form the basis of ten year prescription must be more than a passive acceptance; it must be an affirmative recognition by both parties. Blanchard v. Monrose, 12 La.App. 503, 125 So. 891.” (Emphasis added.)
As the court in this case in deciding definitely, considered only the prescription of thirty years under LSA-C.C. Art. 852, and did not concern itself to any extent, that is with any serious consideration of the prescription under LSA-C.C. 853 and the rule or holding in Blanchard v. Monrose, supra, and with all due respect, I regard its statement in relation to the provisions of Article 853 as in the nature of obiter dictum and therefore, not binding on this court. In making the last statement, the writer is reminded that “Fools rush in where angels fear to tread,” however, I believe that my conclusion is sound and right and know of no other way to bring it to the attention of our Supreme Court where it can receive serious consideration as the main issue.
There is another case which was cited by counsel for appellee in his brief as one on which he greatly relied and also as one upholding his contention that boundaries may be established by mutual consent of the parties without complying with the formalities required under the other articles relating to the fixing of boundaries in our Civil Code, viz., Kobler v. Koch, La.App., 6 So.2d 55, 62. I do not so interpret the case. In this case, the Court through Judge, now Justice, Hamiter who was at the time a member of the Second Circuit Court of Appeal, and also who was the organ of the court in the case of Anding v. Smith, supra, which has been consistently followed by the Second Circuit, stated:
“In construing that article, along with other provisions found in Book 2, Title 5 of the Civil Code, our Supreme Court held in Opdenwyer v. Brown, 155 La. 617, 99 So. 482, 483, that the action of boundary lies in only three cases, namely: (1) When the adjoining estates have never been separated physically and the limits of each marked by visible bounds; (2) When the two estates have once been separated, but the physical bounds are no longer visible; in which event the action is restricted in purpose to the replacing of the monuments as they formerly stood; and (3) When the bounds exists but have been placed incorrectly.
“As to the mentioned first two cases, according to that authority, the action cannot be prescribed against; because everyone is entitled at all times to have his estate separated from that of his neighbor. In speaking about the third possible instance, however, the court said:
“ ‘But if visible bounds actually exist, which have been placed there by consent, the action to rectify any alleged error in the location thereof must be brought within 10 years, or it will be prescribed. R.C.C. art. 8537
*793 “The boundaries involved in the instant case, as staked under the Williams’ survey, were fixed according to a common title and by consent. The affected two lots were, as before shown, platted and laid out in the formation of the Land Subdivision in 1901 under an agreement between the then owners, the heirs of Mrs. Mary E. Land, deceased. They, together with other lots, were afterwards acquired by these plaintiffs, residents of Shreveport, Caddo Parish, Louisiana. Later, and specifically on June 14, 1923, defendant, Mrs. Koch, became the owner of Lot 98 through mesne conveyances from plaintiffs.
“ ‘When purchased by Mrs. Koch, Lot 98 did not bear the monuments placed there by Williams in 1901; but its boundaries, as fixed under the original survey, were plainly delineated by means of the dwelling and other improvements located thereon. As before shown, the easternmost portion of the dwelling was only six-tenths of a foot from the east line, while the western edge of the driveway coincided with the line dividing such lot from Lot 97. Also, there stood at that time, in the vicinity of the disputed property,' numerous other dwellings and permanent improvements, that had been erected according to the Williams’ survey. Hence it must be said that visible bounds of Lot 98, as originally established, actually existed at the time of defendant’s purchase in 1923.
“This boundary action was not instituted until the year 1940; and, by reason of the intervention of a period of more than ten years during which defendant has been in undisturbed possession of said lot, prescription stands in bar of its success.
“In reaching our decision on the question of prescription we have not failed to consider the jurisprudence of this state, cited by plaintiffs’ counsel, holding that Civil Code Article 8S3 must be construed with reference to the other codal articles dealing with the surveying of land, particularly Civil Code Article 833 which requires that the limits be fixed by ‘a sworn surveyor of this State, who shall be bound to make a proces verbal of his work * * *.’ In this connection it may be said that Jim Williams was a qualified and reputable surveyor and that his recorded map carried the approval and signature of the Parish Surveyor; but it is not shown that he was sworn or that he made a proces verbal of his work. However, in Opdenwyer v. Brown, supra, the Supreme Court, said, after referring to Civil Code Article 833, that ‘an estate may have well-established limits fixed otherwise than by a survey’; and it discussed and approved earlier jurisprudence in which there were upheld certain boundaries that had not been fixed in strict accordance with the provisions of that article.”
Thus we see that the court has cited the Opdenwyer v. Brown case, supra, and quoted the one paragraph upon which I think is responsible for the confusion in our jurisprudence on the question at issue, however, after quoting this paragraph which I have previously in detail interpreted as I understand it, the court then stated that the boundaries involved in the case were staked out under the Williams’ survey and were fixed according to a common title and by consent under an agreement between the then owners. We take this clearly to mean that the owners had mutually consented to have the boundaries fixed and employed a surveyor who presumably was supposed to do it in accordance with the formalities of the code and as a matter of fact did so except there was no showing in the record that he was sworn or that he made a proces verbal of his work. This is the only respect in which there was a failure to establish this boundary line in accordance with the articles of the code. The Court then cited the Opden-wyer case again for authority that an estate may have well established limits fixed otherwise than by a survey. Based upon the cases cited in the Opdenwyer case by the Supreme Court, which the court stated upheld certain boundaries that had not been fixed in strict accordance with the Article 853.
*794 There is a great similarity between the cases cited by the Supreme Court and the case under discussion in that in most of the cases or practically all of the cases cited by the Supreme Court there was a common boundary, well established and defined at the time of the purchase and which the title papers themselves showed beyond a question to be the boundary line, such as a common wall. In other words where parties purchase two lots with a brick building with a common wall down the center and the title shows this and shows that each intends to purchase one of the buildings on each side of the common wall and the title also contains a description of the lots which each is purchasing and it is later shown that if followed it would place the boundary line over in the building of one of the parties, it was perfectly right and just that the court should accept a common wall as the boundary. In the case under discussion it is to be noted that the court in effect held that it did not need a re-survey for the simple reason that the boundaries as fixed under the original consent survey were plainly delineated by means of the dwelling and other improvements located thereon, and for that reason they disregarded the fact that the record failed to show that the surveyor was sworn or that he made a proces verbal of his work in accordance with the requirements of our civil code on the subject and established the line by means of the buildings and improvements which were plainly delineated as visible bounds of Lot 98 as originally established under the survey and were actually in existence at the time of the defendant’s purchase in 1923.
In my opinion this case is clearly not authority for the proposition that ten years prescription under Article 853 is applicable in cases where the boundary has been established merely by mutual oral consent of the parties or by their acquiescence in the line for more than ten years. On the contrary I believe it upholds the opposite, that is, Article 853 as interpreted in many cases and particularly Anding v. Smith, supra.
I believe that by a judicial misinterpretation we have a new rule for the establishment of a boundary other than prescribed by the articles of our Civil Code on the subject matter and I think that we should abide strictly by the articles of the code.
For the reasons given I therefore answer the question posed in the negative. I specifically hold that the prescription provided under LSA-C.C. Art. 853 is not applicable under the facts of this case, and is only applicable where all the formalities prescribed in the articles of our civil code dealing with the fixing of limits and with-surveying of land are complied with.
There remains one question to be decided' and that is which survey shall be accepted as establishing the correct boundary between the parties. After a careful consideration of the record I am of the opinion that the survey which was accepted as the judicial survey in this case, made by Jessen,. Civil Engineer of Lake Charles, Louisiana, on March 15, 1950, and a supplement thereto, correctly fixes the boundary lines between Lots 4 and 5. It appeared that the main difference in Mr. Shutts’ survey and that of Jessen was that the former placed the section line at the intersection of the west line of the Boulevard 25 feet south of the center line of the railroad, whereas, Mr. Jessen placed his section line 31.8 feet south of the center line of the railroad. In explanation of this under cross examination, Mr. Jessen testified:
“Q. Mr. Jessen, your survey and the supplemental survey were both based on the location of the Northwest corner of Section 8 as well as the Northeast corner of Section 8? A. That is true.
“Q. After the controversy involved in this suit you went back and made your supplemental survey? A. That is correct. That is this survey. To me I believe that the point of difference is whether the starting point is 25 feet South of the railroad track, which gets back to the Section line and whether or *795 not it is a straight line. The Section line as I find it is a straight line and there are existing corners in three different places, so I am convinced it is a straight line.
“Q. What are those three places? A. The Northwest corner of Section 8, then the corner of First Avenue which is a quarter-mile West of the Section line of Section 8, and the Northeast corner of the Section which fits the subdivision. The street is dedicated as 60 feet and the subdivision is laid out 30 feet.”
In contrast to Jessen’s testimony we find Mr. Shutts testifying as follows:
“Q. Does your judicial survey show an existing corner on the section line where the section line intersects with the west line of Boulevard? A. No.
“Q. Do you know whether there is an existing corner on the section line at its intersection with the West line of Boulevard? A. No, the section line didn’t interest me at all in this survey and it doesn’t yet.”
From my understanding of this matter, I believe it was important for Mr. Shutts to have taken the section line into consideration. Furthermore, I gather definitely from his testimony that his survey in 1943, as well as the intended judicial survey made by him, which was rejected because ■of an insufficient proces verbal were made ■or based to a great extent on the possession and occupation lines which, of course, were bound to coincide with the only fence which was supposed to be around Lot 5 ■owned by Owens. With regard to his survey of 1943 and his judicial survey he testified :
“Q. In making a survey isn’t it the duty of a surveyor to start at the section corners of a fixed boundary? A. Not that I know of.
“Q. The first thing you do is to attempt to locate a definite starting point, isn’t it? A. Do you mean an actual physical corner?
“Q. Yes. A. It would be impossible in doing surveying work if you had to find an actual physical corner to start surveying. I am not speaking of this particular survey. Your question was general as I gather it.
“Q. That’s right. In making your judicial survey did you take into consideration the section line with its intersection at Boulevard, or did you take into consideration the railroad? A. Both our survey in 1943 and this judicial survey are very largely based on the possession and occupation of this Gayle Subdivision. Gayle owned it all. He could subdivide it like he pleased. I don’t think the section line has a great deal to do with it. The occupation is there, the old fences are there, and the Frank Miller survey was on an old fence. Part of the fence is still there. The south line of this lot in question is on an old fence line. The west line is on an old fence line. There are other old fence lines in the Gayle Subdivision, all of them checking as close as you will get a bunch of old fences to check with this exception : That the furtherest south piece of land in the Gayle Subdivision is occupied two feet too far north.
“Mr. Graham: Would you read the question, please? (Question read by reporter.)
“Q. I am not talking about your previous survey, Mr. Shutts, I am talking about the judicial survey. Did you take into consideration the intersection of the north section line of Section 8 at Boulevard, or did you base it on the location of the railroad? A. I based it on the location of the extension of the center line of the railroad and on the occupation in the Gayle Subdivision.”
From the above testimony I feel that really both of his surveys were mainly *796 based on possession and occupation, and his belief that the section line was 25 feet south of the center line of the railroad, although he did not make the necessary actual re-survey to verify this belief on his part, whereas, Mr. Jessen went to great pains to definitely establish this distance. If Mr. Shutts depended greatly upon possession as shown by the occupational line, he naturally could not establish the boundary lines other than along his previous survey in 1943 for the Miller partnership, and the fence which was erected in accordance with this line. Both surveys were made I believe from the testimony upon the erroneous belief that the section line at the intersection of the West line of Boulevard was 25 feet south of the center line of the railroad whereas I believe from Jessen’s testimony that it was definitely, as stated by him, 31.8 feet south of the center line of the railroad
An acceptance and approval of the Jes-sen survey will not disturb all the lots in this subdivision but will make the lines of the lots in the rear coincide with those in front. Also, if the Shutts survey is approved and homologated the lot lines will extend into the streets.
For the above and foregoing reasons I believe that the judgment of the district court should be reversed in that the plea of ten years prescription under Article 853 should have been overruled and the survey of Jessen approved and homologated and the lines in this subdivision established in accordance therewith.
I respectfully dissent.